that the amount of the checks handed over which appear as Exhibits 4, 5, and 6 were $1,282.21.

It appearing, therefore, that the value had been given for the note, and it appearing, as the court charged, that there was no evidence of any notice to plaintiff's assignor of any arrangement between Roth and Gilbert, plaintiff was entitled to the charge requested that he was entitled to recover, unless the jury was satisfied that the taking of the note in question by Weill or the Acme Gas & Electric Fixture Company amounted to bad faith.

Section 95 of the Negotiable Instruments Law provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Section 93 thereof provides:

"Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him."

The judgment and order should be reversed, and a new trial directed, with costs to appellant to abide the event. All concur.

---

(164 App. Div. 586)                    In re EMMET.

In re RICHMOND RADIATOR CO.

(No. 6335.)

(Supreme Court, Appellate Division, First Department. December 4, 1914.)

1. INJUNCTION (§ 223*)—VIOLATION—CONTEMPT—PROCEEDING BY CREDITORS —SURETY COMPANY—LIQUIDATION OF AFFAIRS.
    Where, in a proceeding in the Supreme Court to liquidate the business of an insolvent New York surety corporation, at the instance of the superintendent of insurance, the court, in the exercise of its jurisdiction to control and manage the corporation's property, enjoined its creditors from bringing any action, suit, or proceeding against the corporation, or making or executing any levy on its property, or interfering with the superintendent or his successor in his or their possession, control, and management of the corporation's property, or in the discharge of their duties as liquidators, and a copy of such order was served on respondent, which had a claim against the company as surety on a contractor's bond issued in Virginia, proceedings taken by respondent in that state to secure payment of its claim out of the proceeds of funds deposited by the surety company there as a condition of its right to do business in that state constituted a contempt, for which respondent was punishable in New York.
    [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 448–473; Dec. Dig. § 223.*]

2. INJUNCTION (§ 232*)—VIOLATION—PUNISHMENT—LOSS.
    Where the superintendent of insurance, liquidating the affairs of a New York surety company, was not shown to have suffered any pecuniary loss or injury by respondent's institution of a proceeding in Virginia to enforce a claim against the surety company's deposit in that state, which was in violation of an injunction issued in the New York liquidation proceeding, a judgment imposing a fine, in so far as it included a sum as compensation to petitioner, was erroneous, under Code Civ. Proc. § 2284, providing that, where it is not shown that such an actual loss or injury

has been produced, a fine must be imposed, not exceeding the amount of complainant's costs and expenses and $250 in addition.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 519–528; Dec. Dig. § 232.*]

Hotchkiss, J., dissenting.

Appeal from Special Term, New York County.

Application by the People, by William T. Emmet, Superintendent of Insurance, to liquidate the business of the Empire Surety Company. From a Special Term order granting a motion to punish the Richmond Radiator Company for contempt in violating an injunction restraining creditors from prosecuting proceedings to establish their claims, it appeals. Affirmed.

See, also, 87 Misc. Rep. 69, 150 N. Y. Supp. 260.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

White & Case, of New York City, for appellant.

Frederic G. Dunham, of Albany, for respondent Superintendent of Insurance.

INGRAHAM, P. J.   On the 16th day of December, 1912, an order was duly made in this proceeding directing the superintendent of insurance to take possession of the property and liquidate the business of the Empire Surety Company, pursuant to section 63 of the Insurance Law (Consol. Laws, c. 28).   Among other things, that order provided:

"That until the further order of this court the policy holders and creditors of the said corporation and all other persons be and they hereby are enjoined and restrained from bringing any action at law or suit in equity or special proceeding against the said corporation, and from making or executing any levy upon the property of the said corporation, or in any way interfering with the said superintendent of insurance, or his successor in office, in his or their possession, control, and management of the property of the said corporation, or in the discharge of his or their duties as liquidators thereof."

Prior to the 15th day of March, 1913, the appellant filed with the superintendent of insurance a claim for materials furnished to R. H. Richardson & Son, Hampton, Va.   On the 28th of April, 1913, the order of the 16th of December, 1912, containing the said injunction, was duly served upon the appellant.   On the 29th of December, 1913, there was filed in a certain proceeding instituted in the United States District Court for the Western District of Virginia a petition of the appellant, whereby the petitioner prayed that its claim of $1,500 be allowed as a claim in the state of Virginia outstanding against the said Empire Surety Company, and therefore entitled to be paid out of the proceeds of the funds deposited by said Empire Surety Company as a condition of doing business within that state.   This proceeding was thereupon instituted to punish the appellant for contempt for violation of the injunction of the 16th of December, 1912.

[1] By filing its claim with the superintendent of insurance against the insolvent corporation, the liquidation of which this state had undertaken, and by the service of the order of this court of the 16th of December, 1912, upon the appellant, the Supreme Court acquired jurisdic-

tion over the appellant, and it was bound to obey its orders. Whether that order was or was not improvidently granted is not in controversy in this proceeding. The only question is whether the court had jurisdiction to make the order, and, if it had, whether the appellant had violated the injunction therein contained.

I have no doubt but that the court had jurisdiction to make the order. The said Empire Surety Company was a New York corporation. The Supreme Court of this state had instituted a proceeding to liquidate its business and apply its assets to the payment of its debts. All the property of the corporation, wherever situated, thereby vested in the superintendent of insurance for the purpose of liquidation. The Supreme Court had jurisdiction to take possession of its assets and direct their application to the creditors of the corporation, and it had jurisdiction to restrain the creditors of the corporation from taking proceedings against it for the purpose of recovering their claims, and to restrain the creditors from interfering with the possession of the property by the superintendent of insurance. It may be that, upon a proper application to the court, it might have relieved the appellant from the injunction and allowed it to file the claim against the said company in Virginia. But the appellant, if it violated the order of the Supreme Court, was liable, in this state, at any rate, for the penalty which the statute imposes for a violation of its orders. The superintendent of insurance was entitled to receive from the state of Virginia the proceeds of the funds deposited by the said Empire Surety Company in the state of Virginia in excess of any liens to which it was subject. An attempt by a creditor of the said company to obtain a lien upon that fund in the state of Virginia was an attempt to deplete the property of the said company which would come into the possession of the liquidator for the purpose of being applied to the payment of the corporation debts.

I do not think that the question whether this injunction was too broad, or should not have enjoined the appellant from taking this proceeding to enforce its claim, can be considered on this appeal. The questions, it seems to me, are whether the court had jurisdiction, which I think it clearly had; whether the court acquired jurisdiction over the person of the appellant, which I think it clearly did; and whether the appellant, by filing its claim in the United States District Court for the Western District of Virginia, violated the provisions of this injunction order, which I think it clearly did. The appellant was therefore in contempt, and the court has the power to punish it for such contempt.

[2] By section 2281 of the Code of Civil Procedure the court was authorized to determine whether the accused had committed the offense charged, and was then directed to make a final order providing that it be punished by fine or imprisonment. Section 2284 of the Code of Civil Procedure provides:

"Where it is now shown that such an actual loss or injury has been produced, a fine must be imposed, not exceeding the amount of the complainant's costs and expenses, and two hundred and fifty dollars in addition thereto. * * * "

I do not see in the record any statement that tends to show that the superintendent of insurance has been occasioned any loss or injury

by the institution of this proceeding in violation of the injunction, nor does it appear that he was entitled to any costs or expenses of the proceeding.

I think, therefore, the order should be modified, by fixing the fine at the sum of $250, and striking out the sum of $50 as compensation to the petitioner, and, as so modified, affirmed, but without costs.

SCOTT, CLARKE, and DOWLING, JJ., concur.

HOTCHKISS, J. (dissenting). The claim of the appellant is that Huffman, the subcontractor in whose favor the claim originally arose, and who was the assignor of the Model Company, appellant's predecessor in interest, was at the time the debt was contracted a citizen of Virginia, and as such, under the laws of that state, was entitled to a lien on the securities in the hands of the Virginia commissioner, and that appellant has been subrogated to Huffman's rights with respect to such securities. It is doubtless true that, by filing its claim with Superintendent Emmet, appellant subjected itself to the jurisdiction of this court, and that, as an incident to such jurisdiction, the court was invested with power to make such orders as were necessary for the protection of the assets amenable to the proceedings pending before it, and in that behalf to direct and control the appellant with respect to its claim as filed. But by the mere act of filing its claim appellant did not release any security it may have had therefor, or the right to enforce the same. People v. Remington, 121 N. Y. 328, 24 N. E. 793, 8 L. R. A. 458; Matter of Binghamton General Electric Co., 143 N. Y. 261, 38 N. E. 297. Securities deposited under circumstances similar to those under which the securities held by the Virginia commissioner were deposited have been held to constitute a separate fund, to be administered for the benefit of those in whose behalf the fund was created. See People v. Granite State Prov. Ass'n, 41 App. Div. 257, 58 N. Y. Supp. 510, affirmed 161 N. Y. 492, 55 N. E. 1053.

The fund in question was not under the jurisdiction of this court, nor could this court control its distribution. It was held by the state of Virginia, which was undertaking its distribution in a special proceeding to which all persons having claims against the fund were invited to become parties. It would in no way have inured to the advantage of the general assets of the Surety Company had the appellant refrained from filing its claim. Such action on its part would only have increased the pro rata distribution of those who did file claims. The securities constituting the Virginia fund had passed out of the possession of the Surety Company and were not under its control, and the respondent had no interest in the fund as such. It was at most entitled to contest the right of the Virginia authorities to distribute the same, or the right of the appellant or other claimants under the Virginia law to participate in such distribution, always providing that the respondent should be admitted by the Virginia courts to intervene in the proceedings there pending. By filing its claim, appellant did not interfere with or embarrass any such right on respondent's part.

Nor, had respondent not so intervened, would a determination in those proceedings that appellant was entitled to participate in the fund have had the effect, as against the respondent herein, of an adjudication as to appellant's status as a creditor so far as any New York assets or any general assets of the Surety Company were concerned. The situation was then entirely different from what it would have been, had defendant attempted to subject the general assets of the Surety Company in a foreign jurisdiction either to a general or a special claim on appellant's part.

It is not claimed that on this appeal appellant can raise any question concerning the validity of the injunction order, but we may properly inquire whether the injunction, when fairly construed, extended to any such situation as that disclosed by this record; and that question, as a question of law, I think must be answered in appellant's favor. But if I am wrong in this, and assuming the question to be one of fact, the situation was at least one of such doubt that, under the circumstances disclosed, no willfulness or contumacy being disclosed, the order appealed from was unwarranted.