In the Matter of the Application of the PEOPLE OF THE STATE OF NEW YORK, by William T. Emmet, Superintendent of Insurance, for an Order to Take Possession of the Property and Liquidate the Business of THE EMPIRE STATE SURETY COMPANY.

In the Matter of The Claim of THE UNITED STATES OF AMERICA, Surety Claim No. 122. H. K. LUCE & COMPANY.*

(Supreme Court, New York, December 22, 1920.)

*Insurance — guaranty — evidence — liquidation of surety company — a judgment procured in the United States District Court for the Eastern District of Washington is prima facie evidence of damage — Insurance Law, § 63.*

CLAIM by the United States government against the superintendent of insurance of the state of New York liquidating the business of a surety company.

Francis G. Caffey, United States Attorney (J. Joseph Lilly, Special Assistant United States Attorney, of counsel), for claimant.

Clarence C. Fowler (Albert Reese, of counsel), for Superintendent of Insurance for the State of New York.

FREDERICK C. TANNER, Referee. This is a claim for $9,772.13 made by the United States government against the superintendent of insurance of the state of New York, liquidating the business of the Empire State Surety Company, a domestic corporation.

On August 15, 1908, the United States entered into a contract with one H. K. Luce and the Standard Building Company for the construction of part of the Sulphur Creek Wasteway, a reclamation project conducted by the Federal government in the state of Washington. The Empire State Surety Company,

---

*Published by request.—[REPR.

by its bond dated August 17, 1909, bound itself to the United States of America in the sum of $13,392 for the faithful performance of this contract, and for the payment to all persons supplying labor and materials to Luce and the Standard Building Company.

The work covered by the contract and the bond was commenced and approximately three miles of the excavation of the ditch completed out of the seven miles contemplated, although practically none of the concrete work was undertaken. The project engineer on the job, pursuant to provisions in the contract authorizing a change, altered the specifications and drawings in relation to the width of the channel and the slope of the banks. The work was abandoned by the contractors on the 17th day of June, 1909, under claim that the change was in direct conflict with the terms of the contract and that they were no longer bound thereby.

Thereafter, and pursuant to the terms of the contract, the United States government declared the contract with Luce and the Standard Building Company "suspended," re-advertised and made a contract with one H. W. Hawley for the completion of this work, dated September 10, 1909. The original contract provided for completion January 1, 1910, and the time of completion in the said Hawley contract was extended to April 1, 1910. Hawley proceeded with his contract and received numerous payments thereunder, but finally likewise abandoned the work, after which the United States government stepped in and completed it on the 15th day of November, 1910.

This claim is to recover the excess cost of completion. The first contract, which we may for the sake of convenience refer to as the Luce contract, provided for an approximate total compensation of $66,960, based on an estimated number of cubic yards of excavation, concrete, back filling, etc., at various prices

per unit. The Hawley contract made similar provisions, but generally speaking, the number of cubic yards was changed owing to the status of the work when the Hawley contract was made and the unit price was, in most instances, in excess of the Luce contract. The Government completed the work at actual cost, plus overhead and maintenance.

On November 2, 1911, a suit on the bond, and the contract made by Luce and the Standard Building Company was instituted in the United States District Court for the Eastern District of the State of Washington, which was the district in which the work was located. The claimant maintains that the Empire State Surety Company appeared in that action by attorney and interposed its answer as did the contractors, Luce and the Standard Building Company, issue having been joined before December 16, 1912, which was the date of the order entered in the Supreme Court of the state of New York, directing the liquidation of the Empire State Surety Company.

On February 26, 1913, judgment was entered in the United States District Court for the Eastern District of Washington in favor of the United States and against the contractors in the sum of $10,544.13, the amount of the claim in the complaint being for $9,772.13, the difference representing interest and costs.

Subsequent to this judgment and on the 23d day of September, 1913, an order was entered in the Supreme Court of the state of New York dissolving the Empire State Surety Company. On December 6, 1916, the claim of the United States for $9,772.13, which had been filed on February 24, 1913, was disallowed by the superintendent of insurance. Objections to the disallowance were interposed by the United States and the claim was referred to the referee on the 26th day of January, 1917. A great amount of testimony was introduced by the claimant

and the exhibits in the case are voluminous. It was not submitted to the referee on the part of the claimant until the 13th day of December, 1920, and under somewhat peculiar circumstances. Because of the nature of the claims under this contract and the great lapse of time between the accrual of the claim and the hearings to enforce the same, I allowed the claimant the widest latitude in proving its case. The witnesses have become widely scattered and were brought from a great distance and at considerable expense. At the conclusion of the claimant's case, in order to pass upon questions of law which might determine the case and thus save further litigation, at the request of the superintendent of insurance I directed that briefs be filed and I announced that if I reached the conclusion that the plaintiff had made out a *prima facie* case, the liquidator would be allowed an opportunity either to rebut testimony adduced or to prove his affirmative defenses. This procedure was adopted in this particular case to avoid unnecessary expense to the estate of the surety company in case the claimant had failed to make out a case and thus preserve the amount available for dividends upon claims duly allowed.

Claimant relies upon three separate and distinct lines of proof to establish its damage:

*First.* The judgment of the United States District Court.

*Second.* The certificate of its chief engineer as to the costs of the contract and the consequent damage, and

*Third.* Common-law proof through its project engineer and the storekeeper in the state of Washington as to the items of damage.

I will first consider the last named line of proof.

The common-law proof consisted of the testimony of the engineer on the job, Ernest McCullough, who testified at great length, and of Anton H. Gullickson,

who was the chief clerk of the Yakima project, who had charge, under the supervising engineer, of the office at North Yakima and the store house at Sunnyside. It appeared that the witness McCullough had also charge of much other reclamation work, of which the portion covered by the Luce contract was a small part, and at times was away from the scene of the Luce contract for several days to a week at the time. Mr. Gullickson's duties also covered a much broader field than the territory affected by the contract at bar, and it became apparent to me that much of their testimony was hearsay. On that part of the work done by the government after the withdrawal of Luce, the Standard Building Company, and later Hawlep, the claimant sought to introduce the books of the various time-keepers. The time-keepers themselves were not produced, although several of them are still in the government service, and requirements of the law of evidence in such matters were not satisfactorily met, and these books were excluded. I was further constrained to strike out much of the testimony of the witness McCullough on the ground that it was manifestly hearsay. It must be borne in mind that the contract did not give to this project engineer the power to make a statement as to the cost of completion which would be binding on both parties, and with that portion of the evidence I have alluded to stricken out, the general condition of the common-law evidence was so unsatisfactory as to the amount of the damage, if any, that an award based upon such evidence alone would be little more than speculation.

The next point to be considered is whether the judgment recovered in the United States District Court for the Eastern District of Washington is competent to sustain the claimant's cause of action. Counsel for the superintendent of insurance in a very able brief attacks this as of no binding force and

effect against the estate of the insolvent surety for the reason that it was secured on February 26, 1913, after the order liquidating the Empire State Surety Company was entered (December 16, 1912). In the latter order, the creditors of the surety company were restrained from bringing "any action at law or suit in equity or special proceedings against the said corporation." The defendant contends that the claimant, by proceeding in violation of this injunction order, rendered the judgment it procured null and void, and that at best the judgment was against a corporation that had been "dissolved," and the receiver not having been made a party, no effect can be given thereto.

There is no contention here that the injunction order was served on the plaintiff and in fact the judgment was entered only two days after the claim was filed with the superintendent of insurance and only a little over two months after the order of liquidation had been entered. Counsel has cited *Matter of Empire State Surety Company*, 164 App. Div. 586, to show that our Supreme Court has enforced this injunction order in the present liquidation and has fixed a fine of $250 in contempt proceedings against a claimant, The Richmond Radiator Company, who instituted a certain proceeding in the United States District Court for the Western District of Virginia on the 27th day of December, 1913. In that case it affirmatively appears that the proceeding was commenced by the claimant not only after the order of liquidation of December 16, 1912, which had been duly served upon it, but after the final order of dissolution, which was entered on September 23, 1913. This brought it squarely within the terms of the order which prohibited the " commencement " of an action. It does not seem to me that the injunction, which was very broad in its terms and related to future actions of proceedings, should be further

extended to the prosecution of actions which were commenced long before the order of liquidation was entered. To do so would be to ignore the decision in *Matter of Empire State Surety Co.*, 216 N. Y. 273, in which the following questions which had been certified by the Appellate Division, first department, were answered in the affirmative:

" 1. Did the procurement of judgments against the Empire State Surety Company in the United States District Court after the date of the liquidation, to wit: December 16, 1912, in actions regularly begun before that date, entitle the claimants recovering such judgments to share in the assets of said surety company in the hands of the superintendent of insurance as liquidator?  *  *  *

" 5. In a case wherein an action had been begun against the Empire State Surety Company in the United States District Court before the liquidation of said surety, to wit, December 16, 1912, but no final judgment had been recovered prior to the date of the order herein appealed from, will conforming to the provisions of the statute under which the bonds were issued, and hereafter obtaining judgment against said surety company upon their claims, entitle the claimants to share in the distribution of the assets in the hands of the superintendent of insurance as liquidator?"

This decision of the Court of Appeals was made in November, 1915, and the certified questions above quoted were contained in the order of the Appellate Division dated June 25, 1915. This decision was made in this same proceeding to liquidate this insolvent surety, the Empire State Surety Company, and a further reading of the opinion shows that the court draws the distinction between the actions which had been commenced before December 16, 1912, and those commenced after that date. See page 280 of the opinion.

The counsel for the liquidator cited in his reply brief my opinion in *Matter of Clow & Company,* Surety Claim No. 127A, in this same liquidation proceeding, as an authority against allowing the judgment of the United States District Court of the Eastern District of Washington, in the instant case. What was decided in substance in the *Clow* case was that a claimant who had furnished labor or material must conform to the provisions of the statute. Act of February 24, 1905, chap. 778; 33 U. S. Stat. at Large, 811. This statute provides that the United States of America should have the exclusive right for six months after the completion and settlement of the contract in which to bring an action against the bondsmen and that thereafter persons supplying the contractor with labor or materials should apply to the proper federal authorities to bring suit in the name of the United States in the Circuit Court of the United States in the district in which said contract was to be performed, that only one action should be so brought by a creditor, that he should bring in by publication all other parties who might have claims and that the rights of all parties should be thereupon determined.

The liquidator, however, overlooks the distinction between the United States, who had a direct right to bring suit upon the bond, and the purely statutory right which a material man had and which has been pointed out in *People v. Metropolitan Surety Co.,* 211 N. Y. 107, a case arising under provisions of the statute above cited, to which strict compliance must be made.

The facts in the instant case, therefore, take it without the principles enunciated in the *Clow* case, and authorities therein cited, and bring it within the decision in *Empire State Surety Company,* 216 N. Y. 273, for we find the claimant pursuing the exact course there outlined, of having brought suit in the United

States District Court before the order of liquidation and reducing it to judgment after said date. It seems to me that the learned counsel for the liquidator has failed to grasp the distinction between an order of liquidation and an order of dissolution. It is not contended that a judgment can be recovered against a corporation after its dissolution, without making the receiver or similar officer a party thereto, any more than a judgment can be recovered against a dead man, without bringing his representatives into court.

Section 63 of the Insurance Law, under which these proceedings are being conducted, in paragraph 3 thereof, provides for the entry of an order of liquidation and that thereafter (par. 10): " * * * the superintendent of insurance may apply for the dissolution of such corporation."

This distinction is made plain by Mr. Justice Scott in *City of New York* v. *Illinois Surety Company*, 180 App. Div. 513, 514, where he says: " It is sought to sustain the judgment appealed from by the authority of *People* v. *Metropolitan Surety Company* (205 N. Y. 136). That case, however, is not applicable. There the corporation had been dissolved. Here there is no allegation or proof of dissolution, merely that what is sometimes called a chancery receiver had been appointed. So far as appears the corporation remains alive."

Section 63 of the Insurance Law has been directly construed in *Hartigan* v. *Casualty Company*, 180 App. Div. 193. In that case plaintiffs recovered a judgment against the defendant casualty company which was affirmed by the Appellate Division, third department. The defendant having become insolvent, an order was granted pursuant to section 63 of the Insurance Law, liquidating its business. The superintendent of insurance took an appeal to the Court of Appeals and the respondent returned the notice of appeal on the ground that it was erroneously taken

in the name of the defendant instead of in the name of the superintendent of insurance, and in discussing the meaning of section 63 of the Insurance Law, the Appellate Division said, in granting the motion to require the respondents to accept such notice of appeal, as follows: " The statute is one of enlargement rather than one of restriction. It was not designed to curtail or limit the powers or rights of the Superintendent in the duties imposed upon him in his official capacity. The provision in the order above quoted does not have reference to court procedure in pending litigation, but to the title to the property and assets of the corporation and the management thereof. The direction to the Superintendent to deal in his own name is specifically limited to the ' property, contracts and rights of action ' of the corporation. ' It has been said that a right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant ' (1 Ruling Case Law, 313). It is only by a strained construction that a judgment against a corporation can be considered as included within the expression ' property, contracts and rights of action ' of such corporation. The judgment which the appellant is seeking to reverse is properly not of the appellant but of the respondents. And certainly it is against the policy of the courts to strain unduly the meaning of words for the purpose of defeating a right of appeal on a question of practice. Section 63 of the Insurance Law authorizes the court in its discretion to make such a provision as would require this appeal to be taken by the Superintendent of Insurance in his own name. But the order in this instance granted on application of the Superintendent most clearly did not have in view any such limitation on the method of appeal as is sought to be given in this case. The Superintendent of Insurance in procuring that order did not

intend nor did the court in granting it intend to interpose obstacles in the performance of his duties in taking such measures as he deemed wise for the best interests of the corporation.''

It may be, as was intimated upon the hearing before me, that the liquidator may be able to successfully attack this judgment, as for instance on the ground that the court had not acquired jurisdiction of the Empire State Surety Company, and opportunity will be afforded to the liquidator for that purpose, but I do not agree with his contention that all actions or proceedings against the estate of the insolvent corporation automatically ceased upon the entry of the order of liquidation, or that the only tribunal in which claims against the insolvent company could be determined would be the tribunal of the liquidator's choosing, notwithstanding the fact that actions have been duly commenced in other jurisdictions prior to the order appointing him. I therefore conclude that the judgment in this case is *prima facie* evidence of the right of the claimant to recover the amount of its claim, which was specifically mentioned in the judgment.

As to the third point, whether the certificate of Davis, the chief engineer, was competent proof under the terms of the contract, of the excess cost of completion, counsel for the liquidator stated on the hearing before me that he intended to make an attack upon the same. Doubtless this could be done in any case for obvious mistake, or for fraud, and as the hearing will be continued in any event upon the question of validity of the judgment upon which claimant relies, it would serve no useful purpose to pass upon the certificate at the present time with only a part of the evidence before me. A reasonable opportunity will be afforded the liquidator to rebut plaintiff's evidence and to establish his defense.

I will set down this matter for further hearing at my office at 2 P. M. on December 29, 1920.

FREDERICK C. TANNER, Referee. On December 22, 1920, I handed down an opinion denying the liquidator's motion to dismiss at the close of the claimant's case, and affording him a reasonable opportunity to rebut the claimant's evidence and to establish his defenses. I there held that a judgment procured in the United States District Court for the Eastern District of Washington was *prima facie* evidence of damage, but that the liquidator would be afforded an opportunity to attack this judgment on proper .grounds, and the matter was set down for further hearing on December 29, 1920.

Before the date of the adjourned hearing the superintendent of insurance indicated that he had further authorities to submit and asked for a reargument and an opportunity to file an additional memorandum. Oral argument was had on February 15, 1921. As indicated in the prior opinion, the referee allowed the widest latitude in the method of trial of this claim, for owing to the fact that it arose out of transactions dating many years back and occurring in a remote part of the country, the expenses of the litigation threatened to make serious inroads upon the assets of the estate, as well as to cause unwarranted expense to the claimant which might be avoided in part by the method pursued by the referee.

I see no reason, however, to change my opinion that this judgment constituted *prima facie* evidence of the amount of the claim, and that the liquidator, if so advised, should proceed with his defense.

The liquidator urges two principal points .against the judgment procured:

*First.* That the judgment was not binding for the reason that the provisions of the act of February 24, 1905, were not strictly complied with, and

*Second.* That the judgment which was dated February 26, 1913, was invalid because it was rendered after the date of the order of liquidation, December

16, 1912, and because the superintendent of insurance was not made a party to this action.

If further argument were required to dispose of the first objection, it is found in the following authorities, which construe the above act with reference to the distinction between the steps necessary to be taken by the United States, as a party litigant having a direct interest, and the steps necessary to be taken by a person furnishing labor or material. *United States* v. *McGee*, 171 Fed. Repr. 209; *United States* v. *Marshall*, 225 id. 687; affd., Id. 760.

In *United States* v. *McGee, supra*, the court says: " * * * but the statute does not admit of the construction that the provision in the latter part of the sanction respecting the giving of a notice to all known creditors has any reference whatever to the obligation of the United States before it could prosecute its action to final judgment. Said provision has reference only to the duty imposed upon any creditor or creditors who bring an independent action after the failure of the government within six months to sue. This is palpably so for the reason that the pro rata apportionment, where the amount of the bond may be less than the sum of the creditors' claims, applies only to the creditors; and therefore, before any such creditor could take judgment on the bond for his claim, he is required to bring in, by the prescribed notice, the other creditors who are authorized to intervene in such creditor suit, so that the court could ascertain and determine the pro rata distribution of the fund among them. * * *

" It is to be kept in mind that the statute in question as its title expresses, was solely for the protection of persons furnishing materials and labor for the construction of public works, prescribing and regulating their right of action and mode of procedure. It does not purport to give the right of action or to regulate the procedure of the government on the contractor's

bond. The government is left to proceed in the ordinary way by suit on the bond for its indemnity, just as the government did proceed in this case. The statute only gives to the materialmen and laborers the right to intervene in such suit after it is brought. It does not impose upon the government the duty of giving notice of any kind to such assumed creditors, advising them of such right to intervene. This for the reason that the penalty of the bond stands primarily for the protection of the government, and then for distribution among the creditors of any remaining part of the penalty after the satisfaction of the government's demand.''

In *United States* v. *Marshall,* Judge Learned Hand says: '' Now, it is scarcely likely that Congress meant so to limit the right of the United States to sue for its own benefit upon its own bond. Such a suit did not require any act of Congress; it arose at common law and Congress would hardly have intended to subject the United States to the duty, as a condition precedent, of bringing in all creditors. Besides, the very words of the proviso are limited to suits ' instituted under this act,' and if, as I have suggested, this suit lay at common law on the bond, these words are not applicable. Some clearer intention than this should be found to limit the rights of the sovereign.''

The second objection of the liquidator is based on the course of reasoning adopted in a decision by Judge Jurey handed down on December 20, 1917, in the Superior Court of the state of Washington in an action brought by Charles Sumner Best against the Casualty Company of America. In that action a motion was granted to quash the service of the summons and complaint upon the insurance commissioner of the state of Washington, who was authorized to accept service within the state under a law permitting the defendant casualty company to do business there. The casualty company was a New York corporation that had gone

into liquidation under section 63 of the Insurance Law of the state of New York, pursuant to an order similar to the liquidation order in the case at bar. It appears from a memorandum decision in the *Best* case that the liquidation order had been entered *prior* to the commencement of the action, and the court held that the New York law providing for such a dissolution of the corporation was a part of the charter of the corporation and followed it wherever it went, and that all who dealt with such corporation consented to be bound by such method of dissolution.

The facts are radically different in the situation at bar. Here the action was commended on November 2, 1911, more than thirteen months prior to the date of the liquidation order, entered December 16, 1912. It is true that the trial of the action was after the date of the liquidation, but the transcript of the proceedings in the United States District Court for the Eastern District of Washington (Claimant's Exhibit 2) affirmatively shows that the Empire State Surety Company appeared by counsel who took part in the trial, which resulted in judgment for the United States of America. The exhibit before me contains the formal recital on page 1: " The above-entitled case came on to be heard before the Hon. Frank W. Rudkin, J., on the 26th day of February, 1913, plaintiff appearing by its attorney, Ralph B. Williamson, Esq., the defendant, H. K. Luce, appearing by himself, and the defendant Empire State Surety Company appearing by *H. K. Luce, Esq., and Mr. Mafe, Esq.*"

There were also offered in evidence certain papers from the file of the state superintendent of insurance relating to this matter. Claimant's Exhibit No. 3 is a carbon copy of a letter from the special deputy superintendent of insurance to John P. Hartman, of Seattle, Wash., stating that, " We are in receipt of notice of trial in the above entitled action for February 25th, at the Federal Building, North Yakima,

Wash.," and further asking Mr. Hartman to "Take such steps as are necessary to protect the Company's rights * * * in this matter and am entirely relying upon your judgment."

Claimant's Exhibit 4 is the notice of trial referred to, and claimant's exhibit 5 is the letter from Mr. Hartman to Mr. Dunham, the special deputy superintendent of insurance, acknowledging receipt of claimant's exhibit 3, and stating, "I have not arranged to try these cases, but will let it be done by Yakima counsel. I will not break the plans I have made, but I will send the best man I have in the office to assist in this trial. * * * "

On June 3, 1913, Mr. Hartman further wrote Mr. Dunham, special deputy of insurance (claimant's exhibit 6), "This case has been tried at last and judgment rendered for the full amount of the claim of the Government. Under the decision of the Circuit Court of Claims, I do not think there is any hope of reversal."

On June 10, 1913, the special deputy superintendant of insurance wrote Mr. Hartman a letter, of which claimant's exhibit 7 purports to be a carbon copy. It reads, "This acknowledges your letter of June 3, wherein you report the adverse decision in the trial of this action. My judgment seems to concur with yours that no further effort should be made to resist the claim."

Section 63 of the Insurance Law of the state of New York reads in part as follows: "3. If, on a like application and order to show cause, and after a full hearing, the court shall order the liquidation of the business of such corporation, such liquidation shall be made by and under the direction of such superintendent, and his successors in office, who may deal with the property and business of such corporation in their own names as superintendents, or in the name of the corporation, as the court may direct.

The learned counsel for the superintendent of insurance, both in his briefs and in the argument before me on February 15, 1920, contended that the government of the United States was guilty of an act, which if committed by a private litigant would amount to a contempt of the order of liquidation, and rendered the judgment a nullity. It does not appear that the government had ever been served with such an order, but even if I were to follow the reasoning adopted by the court in the *Best* case, that all persons dealing with the surety company had constructive knowledge of section 63 of the Insurance Law and of all orders that were made thereunder, this contention would be offset by the act of the special deputy superintendent of insurance in contesting this action in the state of Washington in the name of the Empire State Surety Company.

The Insurance Law, section 63, subdiv. 6, provides: " For the purposes of this section, the superintendent shall have power to appoint, under his hand and official seal, one or more special deputy superintendents of insurance, as his agent or agents, and to employ such counsel, clerks and assistants as may by him be deemed necessary, and give each of such persons such powers to assist him as he may consider wise."

That the present superintendent of insurance is bound by the acts of his predecessors is elementary, and in view of the section of the law quoted, the acts of the deputy superintendent are *prima facie* binding upon this liquidator.

The additional point is raised by counsel for the superintendent of insurance that the evidence now before the referee shows that the engineer's certificate on which judgment of the District Court of Washington is largely based, cannot be relied upon, and that, therefore, the judgment must fail.

The state of evidence before Judge Rudkin in that case was different from that before the referee. Even if the evidence in the two claims were substantially

identical, I am not aware of any authority for the proposition that a referee can sit as a court of appeal and in effect reverse a judgment of a District Court, either on the ground of error in admitting evidence, or because of the insufficiency thereof, or because the referee might have reached a different conclusion. There may be reasons for attacking a judgment collaterally, as I have indicated in my previous opinion, *i. e.*, on the ground of lack of jurisdiction.

As heretofore indicated, opportunity will be offered the liquidator to rebut the evidence of the claimant herein and to proceed with his defenses. I will set the matter down for further hearing the 3d day of March, 1921.