428

In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Rehabilitate the TITLE AND MORTGAGE GUARANTEE COMPANY OF BUFFALO. (Series " B " and " R " Reorganization.)

Supreme Court, Erie County, July 27, 1934.

*Moot, Sprague, Brownell, Marcy, Carr & Gulick,* for the petitioner.

*Thomas C. Burke,* for George S. Van Schaick, Superintendent of Insurance.

*Kenefick, Cooke, Mitchell, Bass & Letchworth* [*Thomas R. Wheeler* of counsel], for the trustees, DeWitt Clinton and others.

*A. S. Thomson,* for the Veterans' Administration.

HINKLEY, J.   On August 14, 1933, the Superintendent of Insurance was, by order of this court, directed to rehabilitate the above-named corporation in accordance with article XI of the Insurance Law.

The company had deposited with the Marine Trust Company of Buffalo prior to the order of rehabilitation certain bonds and mortgages and issued against the same certain certificates of mortgage indebtedness in series.   The title company became the " primary debtor, assigning the mortgages only as collateral security for the debt."   (*Matter of People* [*Title & Mortgage Guarantee Co.*], 264 N. Y. 69, 88.)   Upon the promulgation, adoption and approval of a plan similar in each of series B and R, the assets deposited and held as security for such certificates were transferred to respective corporations formed for the purpose of conserving and administering such assets.

Each plan provided that

" DETERMINATION OF PRIORITIES.

" The rights of any certificate holders claiming priority over others, and the rights, if any, of the Rehabilitator in the assets transferred to the corporation shall forthwith be submitted to the Supreme Court in and for Erie County, New York, in the Rehabilitation Proceeding.

" All such claimed priorities and rights, however, shall be determined on the basis as if no reorganization of the rights of holders of mortgage investments had been effected and this plan had not been approved and become binding."

The series corporations in accordance with that provision have come into court for the fulfillment of the direction contained in that clause of the plan.

The question of the rights of the rehabilitator in and to the assets transferred to the series corporations is apparently clear. Such transfer vested absolute title in such assets in the respective series corporations subject only to the following limitations and contingencies.   In the event of the termination or dissolution of either such corporations, assets remaining undistributed in such series shall be and constitute general assets of the title company in the hands of the rehabilitator.   In the event of the termination of rehabilitation prior to the termination of either series corporations, then such surplus assets, if any, of that series, shall become the general assets of the title company.   Each series is distinct and no one certificate holder in any series has a lien upon the assets pledged as security in any other series.   The title company is the primary debtor and in addition to the general liabilities

heretofore incurred in the conduct of its ordinary business is liable to any certificate holder for any deficiency arising from his failure to realize from the deposited bonds and mortgages sufficient to pay his certificate in full, with interest. It follows that every certificate holder has a claim as general creditor upon the general assets of the title company for any failure of the title company to reimburse him in full for his certificate.

The determination of the question of claimed priorities of rights of certificate holders as among themselves is also before the court. Counsel for the rehabilitator and counsel for the corporations formed to take over the assets of series B and R contend that there are no priorities or preferences as among the certificate holders. Counsel for one or more of the certificate holders who have demanded payment of the principal and interest of their certificates contend that they are entitled to immediate payment thereof out of moneys received in payment of deposited bonds and mortgages. The latter does not ask that the court determine that these claimants have a priority over others upon a distribution of the entire or a portion of the assets but asks that the rehabilitator and the series corporations be compelled to carry out at this time one of the obligations of the title company contained in the certificates.

The obligations contained in the certificates and which claimants ask be fulfilled are divided into three classes. For ready reference they may be denominated the three-year options, the death claims and the fiduciary claims. They are as follows:

" Three years after the date of this Certificate and on any interest date thereafter, the registered holder of this Certificate, having given sixty days' previous notice in writing of his intention so to do, shall have the right upon the assignment and delivery of this Certificate to the Company to require the payment of the principal sum and interest as aforesaid out of any moneys received by the Company in payment of the deposited bonds and mortgages after the receipt of such notice by the company, and after the payment of any certificates of this issue in respect of which the Company shall previously have received notices requiring payment; and the Company agrees to pay such principal and interest accordingly. All certificates shall be payable in the order in which such notices shall be received and registered by the Company.

" In the event of the death of the registered holder hereof, upon request by his legal representatives, the Company will purchase this Certificate from them at its face value and accrued unpaid interest.

" When the registered holder of this Certificate is an Executor, Trustee, Administrator, Guardian or Committee, the Certificate

shall be payable upon demand when such holder is required to distribute or deliver over, the estate to the persons eventually entitled thereto."

It will be seen that the three-year option yields to a certificate holder the right to require the title company to pay upon demand after a specified time the face of the certificate and interest out of moneys received by the title company in payment of deposited bonds and mortgages as fast as received and in the order of such demands. The death clause is an obligation upon the part of the title company to repurchase the certificate upon request. The fiduciary clause renders the certificate payable upon demand.

The three-year clause will be referred to first. Some time prior to the date of rehabilitation, certain certificate holders exercised the option to require payment of the principal sum and interest due upon their certificates and from time to time thereafter similar demands have been made by other certificate holders. The principal sum of the first of these demands became due under the three-year clause prior to the date of rehabilitation. Others have become due under that clause at intervals since then and others will become due at various times until the year 1935.

The demand for payment of principal under the three-year clause, even though such principal was payable out of any moneys thereafter received in payment of deposited bonds and mortgages, constituted no more than an obligation upon the part of the title company as debtor to pay the same at that time rather than at a later date. The demand did not require the title company to set aside the moneys so subsequently received as a special fund nor did it give to the certificate holder so demanding a lien upon that fund nor operate as an equitable assignment. " It is settled law in this State that an agreement either by parol or in writing to pay a debt out of a designated fund does not give an equitable lien upon the fund nor operate as an equitable assignment thereof." (*James* v. *Alderton Dock Yards*, 256 N. Y. 298, 303.)

The title company did not fulfill its obligation to pay in accordance with that term of the contract. When the rehabilitator took possession of the title company his powers were broad. He was directed by the court to take possession of the property of the insurer and to conduct the business thereof and/or to take such steps toward the removal of the causes and conditions which have made such proceeding necessary as the court shall direct. (Insurance Law, art. XI.) Under such broad powers he, if so advised, might have continued to conduct the business of the title company. Incidental to the conduct of the business, such rehabilitator might have carried out the terms of the three-year clause. He might

have paid to such certificate holders in the chronological order of the maturity of their claims the principal and interest of such certificates from any money then available or thereafter received in payment of the deposited bonds and mortgages. Such payment upon the part of the rehabilitator would have undoubtedly depleted, if not exhausted, the available cash and resulted in immediate liquidation of the company. This is shown by the fact that for some time prior to the order of rehabilitation the title company had defaulted in its obligation to make payment under the three-year clause. Obviously, the enforcement of the three-year clause at this time would result in immediate liquidation.

The rehabilitator took possession of the assets but did *not* conduct nor continue to conduct the business of the title company save to take such steps as were incidental to the conservation of its assets. Under these circumstances, the claims of all creditors, whether secured or unsecured and whether entitled to immediate payment or not, were held in abeyance pending the success or failure of rehabilitation. The rehabilitator is conserving the general and special assets of the title company save as they have been transferred to the series corporations.

Prior to the rehabilitation order the only remedy available to a certificate holder in the event of a default by the title company in its obligation under the three-year clause would have been by a suit at law or in equity. The order of rehabilitation from which no appeal was taken suspended those remedies of the certificate holders. That order, granted August 14, 1933, enjoined and restrained all persons " from bringing or prosecuting any action at law, suit in equity, special or other proceeding against said corporation or its assets." Specific authority for that order is to be found in section 410 of article XI of the Insurance Law. (*Matter of Empire State Surety Co.*, 164 App. Div. 586, at p. 588; *Erie Railway Co.* v. *Ramsey*, 45 N. Y. 637; *Woerishoffer* v. *North River Const. Co.*, 99 id. 398; *Ketchum* v. *Edwards*, 153 id. 534, at p. 538.)

There is, at this time, no reason, authority or equitable consideration in favor of any one or more certificate holders calling for the vacating of that injunction or modifying the same and requiring the rehabilitator or the series corporations to fulfill the obligation of the title company under the three-year clause.

The contract between the certificate holder and the title company as contained in the certificate of mortgage indebtedness and the depositary agreement can in no way be construed to yield to the claimants herein any priority over the remaining certificate holders in the event of rehabilitation. On the contrary, the certifi-

cate, series R, which is similar except as to dates to certificate, series B, provides as follows: " The holder of this Certificate by the acceptance hereof assents and agrees to all the terms and provisions of the aforesaid agreement dated June 10, 1927, subject to and in accordance with which this Certificate is issued." By reference to the depositary agreement of June 10, 1927, series R, and December 30, 1922, as modified December 28, 1926, series B, we find this provision: " There shall be no preference or priority in favor of any share in the deposited bonds and mortgages, or of any Certificates representing the same, as against any other share or certificate, whether held by the Title & Mortgage Company or by any other holder, but each share shall participate equally with every other share in the deposited bonds and mortgages and the proceeds thereof, save as otherwise provided in said Certificates."

That the certificate holders, as counsel for the claimants contends, might have contracted for priorities in the contingency which has arisen, is true. That they did so is not apparent to the court.

The bankruptcy statute creates specific definite priorities (§ 64; U. S. Code, tit. 11, § 104). The Insurance Law in its entirety, which includes the rehabilitation statute, is silent upon the subject of priorities. Statutes relating to bankruptcy, liquidation and receivership are not applicable to rehabilitation which is a separate and distinct attempt to conserve and administer the assets of a corporation in the hope of its eventual return from financial stress to solvency. In the event of failure of rehabilitation, then liquidation follows. (Insurance Law, art. XI, § 402, subd. 2.)

The court, as above indicated, is asked at this time to direct the payment of assets to certificate holding claimants asserting title thereto. The court is not asked by them to determine in advance of liquidation or dissolution questions of priorities among certificate holders. A covenant above quoted in the plan requires, however, that the rights of any certificate holders claiming priority over others shall be submitted *forthwith* to the court. Although submitted at this time, they cannot now be determined. The final status and value of the assets of the series corporations cannot be anticipated. In the event that sufficient assets remain to pay the principal and interest on all certificates in full, then the question of priorities becomes academic. Upon the termination or dissolution of these series corporations or the distribution of any of their assets or the liquidation of the title company, the court will then be in a position to pass upon any and all claims of priority, rights and preferences and direct the proper distribution of the assets.

Whatever has been said concerning the three-year clause applies with equal force to claims under the death clause and the fiduciary clause.

The Veterans' Administration has appeared in this proceeding and made claim that any pension moneys invested in certificates of mortgage indebtedness of the title company have a preference over other investments. The claim is unique in that it argues that because pension moneys are exempt from taxation and are not subject to levy and sale by execution they are entitled to complete protection wherever invested. The court is not asked nor is it authorized or required to direct that all pension moneys invested in these certificates be immediately returned. This claim of preference may be argued as that of any other preference or priority at and when there is a distribution of assets or termination or dissolution of one or more of the series corporations, or the liquidation of the title company.

The determination of the questions here involved should be embodied in a decision as a controlling adjudication or as the basis for an appeal.