In the Matter of the Allcity Insurance Company, Respondent. Mark Kondak et al., Appellants.

First Department, March 1, 1979

## APPEARANCES OF COUNSEL

*Larry E. Ribowsky* for appellants.

*Norman H. Dachs* of counsel (*Leonard H. Minches* and *Shayne, Dachs, Weiss, Kolbrener, Stanisci & Hardwood,* attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

The question presented is whether the court has the power to require that all disputes between an insured and insurer under the New York Automobile Accident Indemnifi-

cation Endorsement issued by an insurer, now insolvent, be resolved by the court in rehabilitation proceedings instead of arbitration, as provided in the endorsement. We hold that it does.

Claimants-appellants are insureds who filed claims against Allcity Insurance Company, a domestic insurer, on April 27, 1977, pursuant to the uninsured motorist endorsement of the latter's policy, as authorized by subdivision 2-a of section 167 of the Insurance Law. These claims were disallowed by the Superintendent of Insurance, who, by order of Special Term, entered August 31, 1977, had been appointed as rehabilitator for Allcity upon its adjudication as insolvent.*

Thereafter, by order to show cause, the superintendent moved to have all insurance claims against Allcity, including those claims under the uninsured motorist endorsement, disallowed. (Insurance Law, § 526.) Claimants cross-moved for an order directing the rehabilitator to proceed to arbitration with their claims before the American Arbitration Association as required by the uninsured motorist endorsement. Claimants had previously served the requisite notice of intention to arbitrate, pursuant to CPLR 7503 (subd [c]).

Special Term directed a reference to hear and report on those disallowed claims as to which there were objections. Appellants' claims were among those referred. The instant appeal resulted.

Claimants argue that they cannot be divested of their contractual right to a resolution of their uninsured motorist claims in arbitration. In support of this position they contend that their claim is not against the assets of the insurance company itself, but rather against the "property and liability insurance security fund" (security fund) established pursuant to sections 333 and 334 of the Insurance Law to pay policy claims against insolvent insurers. Claimants maintain that inasmuch as the security fund is generated by assessments levied against insurers, based upon the amount of premiums written by the insurer (Insurance Law, §§ 333, 334), and since the premiums for their insurance coverage, as originally written, have been paid, they are policyholders of a replacement policy, which they refer to as "Insolvency Insurance". (This "insolvency insurance" is, in fact, the security fund.)

---

* We have taken judicial notice of this fact from the county clerk's file. (See *Susquehanna Silk Mills v Rebora*, 238 App Div 100, 103.)

Therefore, they argue that their Allcity coverage has not lapsed, but instead has been subsumed by the security fund, and all contractual provisions remain outstanding, including their right to arbitration.

Claimants also note that inasmuch as their contractual right of recovery under the uninsured motorist endorsement is the embodiment of a statutorily mandated provision (Insurance Law, § 167, subd 2-a), the integrity of the contract should be respected so as not to impair their statutory rights.

The rehabilitator responds that the statutory scheme for the rehabilitation of insolvent insurers delineates a claims procedure which pre-empts the provisions for arbitration found in the endorsement.

Rehabilitation is a design of the Legislature which permits the Superintendent of Insurance to take possession of the property of a domestic insurer and to conduct its business, when, among other reasons, it becomes insolvent as defined by section 93 of the Insurance Law. (See Insurance Law, §§ 511, 512, subd 1.) The superintendent is "to take such steps toward the removal of the causes and conditions which have made such proceeding necessary as the court shall direct." (Insurance Law, § 512, subd 1.)

The rehabilitator is to retain control of the property and conduct the business of the insurer until the rehabilitator or an interested party applies for an order terminating the rehabilitation proceeding. The termination order, however, cannot be issued until the court has conducted a full hearing and determined "that the purposes of the proceeding have been fully accomplished." (Insurance Law, § 512, subd 3.)

During rehabilitation the superintendent must obtain permission from the court to perform such functions as are necessary for the exercise of his duties. For instance, an order must be obtained to borrow money or execute notes (Insurance Law, § 540); to compensate any special deputy superintendents, counsel, clerks or assistants as are appointed by the superintendent (Insurance Law, § 518, subd 3); and to sell property or to settle claims in excess of $2,500. (Insurance Law, § 539.) And, if the superintendent deems that further efforts to rehabilitate the insurer would be futile, he must apply to the court for an order of liquidation. (Insurance Law, § 512, subd 2.)

It is quite clear, and the courts have long recognized, that "[t]he provisions of the Insurance Law with reference to

liquidation by the Superintendent are exclusive in their operation and furnish a complete procedure for the protection of the rights of all parties interested." *(Matter of Lawyers Tit. & Guar. Co.,* 254 App Div 491, 492; see, also, *Matter of Second Russian Ins. Co. [Hamburg Ins. Co.],* 219 App Div 46, app dsmd 244 NY 606.) "[I]t may * * * be fairly said that the Legislature never contemplated turning over liquidation proceedings, and incidental actions and proceedings, to private arbitrators to administer." *(Matter of Knickerbocker Agency [Holz],* 4 NY2d 245, 251.)

■ ■ There is a difference, of course, between liquidation and rehabilitation; but both are delinquency proceedings envisioned by article 16 of the Insurance Law. (See Insurance Law, § 517, subd 2.) Sometimes the statute makes reference to delinquency proceedings, generically, and other times specifies one or some of the four article 16 proceedings, i.e., rehabilitation, liquidation, conservation and dissolution. When interpreting a statute we should look to the enactment as a whole, to discern "the purpose and policy underlying the statute, and [give] the words a meaning which serves, rather than defeats, the ends intended by the Legislature." *(MVAIC v Eisenberg,* 18 NY2d 1, 3.) Nowhere in the statute is there any indication that the Legislature intended to have rehabilitation effected in any forum but a court of law. Indeed, section 526 provides that any proceeding under article 16 shall be commenced "by an application to the supreme court, or to any justice thereof * * * for an order directing such insurer to show cause why the superintendent should not have the relief prayed for." "The Legislature had the power to permit the Superintendent of Insurance to liquidate or *rehabilitate* such [insolvent] companies, but the extent to which that power shall be used must be supervised by the courts" (emphasis added). *(Matter of National Sur. Co.,* 239 App Div 490, 496.)

Rehabilitation is distinguished from liquidation in that it is "directed toward preservation, whenever possible, of the business of an insurance company threatened with insolvency." (29 NY Jur, Insurance, § 298.) While liquidation is the inevitable aftermath of an unsuccessful attempt at rehabilitation, it can often be the initial proceeding commenced by the superintendent when he is convinced that rehabilitation would be unavailing. Liquidation, of course, brings to a conclusion the affairs of a company. (Insurance Law, § 514.)

An order of rehabilitation must be read in the context of

the provisions of the statute which authorizes it. (See *Matter of Morgan,* 277 NY 203, 210; 29 NY Jur, Insurance, § 299.) Although it has been stated that "Statutes relating to bankruptcy, liquidation, and receivership are not applicable to rehabilitation." *(Matter of Title & Mtge. Guar. Co. of Buffalo,* 152 Misc 428, 434), the case cited dealth with the priority of certificate holders of a title company, and decided that priority could not be determined in advance of liquidation, since the Insurance Law at that time was "silent upon the subject of priorities." *(Supra,* p 434.) Aside from this exception, which deals not with forum or procedure, all the statutes and the cases interpreting them lead to the conclusion that rehabilitation is within the exclusive province of the courts, and is regulated by article 16 of the Insurance Law.

Claimants' principal argument is that the rehabilitation proceedings cannot deprive them of their contractual right to arbitrate their disputes under the uninsured motorist endorsement. Yet, in *Matter of Knickerbocker Agency [Holz]* (4 NY2d 245, *supra)* the Court of Appeals rejected the notion that a statutory liquidator, standing in the shoes of an insolvent insurer, was bound by contractual provisions requiring arbitration. The justification for the exclusivity rule was given by the *Knickerbocker* court, citing a quotation from *Bernhardt v Polygraphic Co.* (350 US 198, 203): "The change from a court of law to an arbitration panel may make a radical difference in ultimate result * * * Arbitrators do not have the benefit of judicial instruction on the law; they need not give their reasons for their results; the record of their proceedings is not as complete as it is in a court trial; and judicial review of an award is more limited than judicial review of a trial."

Claimants seek to distinguish *Knickerbocker (supra)* by pointing out that it concerned general creditors, while the instant case involves the rights of an insured. Yet, nothing in article 16 distinguishes a general creditor from an insured with regard to their treatment by the rehabilitator. The only claimants given special treatment under the statute are those owed wages (Insurance Law, § 537), in that their claims are to be paid "prior to the payment of every other debt or claim"; preferred creditors and secured creditors to the extent of their security (Insurance Law, § 522). Of course, the distinction is with regard to priority of payment not to the procedure for the resolution of such claims.

Claimants further argue that the expansion of the security

fund statutes (Insurance Law, §§ 333, 334), as interpreted by the Court of Appeals in *State-Wide Ins. Co. v Curry* (43 NY2d 298), places the security fund squarely in the shoes of the insolvent insurer, so that coverage never lapses.

In *State-Wide (supra)* the Court of Appeals declared that a third-party claim against an insolvent domestic insurer does not activate a claimant's own "uninsured motorist" coverage because the security fund, to which all domestic insurers must contribute, provides coverage for debts of the subscribing insurers. From this holding claimants reason that since it is their own insurer that has become insolvent, they should be allowed to proceed to arbitration against the security fund on the basis of their "uninsured motorist" coverage.

Subdivision 2 of section 334 provides that the security fund shall be used in the payment of allowed claims of injured parties and policyholders, "remaining unpaid, in whole or in part, by reason of the inability due to insolvency of an authorized insurer to meet its insurance obligations." Subdivision 1 of section 333 defines an "allowed claim" as one based upon a policy on account of a motor vehicle accident which has been allowed by the court in a proceeding under article 16. Thus, if a claim has not been allowed pursuant to article 16 the fund cannot pay it. (See *Matter of Professional Ins. Co. of N. Y.,* — AD2d —.) No section in article 16 permits or provides for the disposition of disallowed claims, or the disbursement of moneys from the security fund, by arbitration. Indeed, subdivision 1-a of section 512 provides that the Commissioner of Taxation and Finance shall advance moneys from the security fund to the superintendent as rehabilitator "to enable the insurer to comply with any surplus requirement or other requirement of this chapter", only if the order of rehabilitation so provides. Before the order can be issued, the court must assure itself "that the insurer has the potential and capability, pursuant to a plan submitted by the superintendent, of complying with all surplus and other requirements of this chapter [art. 16] and repaying such advance to the fund within two years from the date of termination of the rehabilitation proceeding." (Insurance Law, § 512, subd 1-a.) Thus, not only is the security fund not an alter ego of the insurer in the guise of "insolvency insurance", but any payments from the security fund to an insurer in rehabilitation can only be authorized by court order, under the submission of a plan drawn up by the superintendent. No reading of the statute

would envision that an arbitrator is authorized to determine what claims should be allowed. Any claim against an insurer in rehabilitation must be brought against the superintendent himself as the statutory receiver of the assets. (See Insurance Law, § 512.)

Finally, although claimants expressly disavow any claim of constitutional infirmity of any of the article 16 statutes, particularly section 528, which permits injunctions to be issued to prevent interference with the superintendent once the rehabilitator has commenced a proceeding by order to show cause (Insurance Law, § 526), there is the suggestion that the statutory procedures by which an insured's claim against an insolvent insurer, otherwise subject to arbitration, must be heard and determined by the court, are, in fact, unconstitutional.

■ We find no such infirmity, in any event. "[E]very legislative enactment is deemed constitutional until its challengers have satisfied the court to the contrary." *(Montgomery v Daniels,* 38 NY2d 41, 54.) Generally, there is a strong presumption that "the Legislature has investigated and found the existence of a situation showing or indicating the need for or desirability of the legislation." *(Matter of Van Berkel v Power,* 16 NY2d 37, 40; see *Matter of Taylor v Sise,* 33 NY2d 357, 364.)

■■ The Legislature has not abolished the right of recovery under the uninsured motorist endorsement. It has merely provided a substitute forum for the enforcement of claims under the endorsement. This is constitutionally permissible. Courts have consistently found that common-law actions may be replaced by statutory remedies (see, e.g., *New York Cent. R. R. Co. v White,* 243 US 188, 201 [workers' compensation]; *Country-Wide Ins. Co. v Harnett,* 426 F Supp 1030, affd 431 US 934 [no-fault insurance]; *Montgomery v Daniels, supra* [no-fault insurance]). Thus, the arguments that claimants have been deprived of access to a duly constituted legal forum, and that they have a statutorily derived right to arbitration, also pale. The Legislature can replace common-law actions with statutory creations. It can certainly replace the right to a forum, contractually derived, with a statutory remedy since the legislative designs of article 16 permeate the uninsured motorist endorsement. *(Matter of Knickerbocker Agency [Holz],* 4 NY2d 245, 251, *supra; People v Globe Mut. Life Ins. Co.,* 91 NY 174, 179.)

Accordingly, the order, Supreme Court, New York County (Asch, J.), entered May 23, 1978, granting the application of the Superintendent of Insurance, as the rehabilitator of Allcity Insurance Company, to approve and confirm his recommendation for disallowance of the claimants' claims to the extent of referring them to a referee, should be affirmed, without costs or disbursements.

Evans, J. P., Fein, Lupiano and Lynch, JJ., concur.

Order, Supreme Court, New York County, entered on May 23, 1978, unanimously affirmed, without costs and without disbursements.