EMILIO REBORA et al., as Adjusters and Trustees for
NAVIGAZIONE GENERALE ITALIANA, Respondents, *v.*
BRITISH & FOREIGN MARINE INSURANCE COMPANY,
LTD., Appellant.

(Argued October 8, 1931.; decided February 9, 1932.)

*D. Roger Englar* and *James W. Ryan* for appellant. The trial court erred in admitting in evidence an agreement signed by third persons, the consignees, without the knowledge of the defendant and not connected with it.

(*Det Forenede* v. *Insurance Co.*, 31 Fed. Rep. [2d] 658; *Luckenbach* v. *McCahan Sugar Co.*, 248 U. S. 139.) The trial court erred in admitting in evidence the adjustment or apportionment of general average based on hearsay or *ex parte* statements of the shipowner or other interested third parties. (*The Nesco*, 47 Fed. Rep. [2d] 643.) Even if a proper general average adjustment were admissible as proof of the facts stated therein, this adjustment was inadmissible because it shows on its face that it is erroneous as a matter of law. (*The Casey*, 39 Fed. Rep. [2d] 136; *Baulec* v. *New York Co.*, 59 N. Y. 356; *Pollock* v. *Pollock*, 71 N. Y. 137; *Bond* v. *Smith*, 113 N. Y. 378; *Cordell* v. *New York Co.*, 75 N. Y. 330; *Dubois* v. *City of Kingston*, 102 N. Y. 219; *Pauley* v. *S. G. & L. Co.*, 131 N. Y. 90; *Linkauf* v. *Lombard*, 137 N. Y. 418; *Hemmens* v. *Nelson*, 138 N. Y. 517; *Laidlaw* v. *Sage*, 158 N. Y. 73; *Cassidy* v. *Uhlmann*, 170 N. Y. 505; *Johnson* v. *N. Y. C. Co.*, 173 N. Y. 79; *Schoepflin* v. *Coffey*, 162 N. Y. 12; *Barnard* v. *Adams*, 10 How. [U. S.] 270; *Charter Co.* v. *Bowring*, 281 U. S. 515; *National Board of Marine Underwriters* v. *Melcher*, 45 Fed. Rep. 646.) The trial court erred in assuming jurisdiction to determine the liability of goods and the extent of a maritime lien in *rem* on them for general average contribution. (*Langnes* v. *Green*, 282 U. S. 531; *Merritt* v. *Tice*, 77 App. Div. 326; 118 App. Div. 123; *The Lewis H. Goward*, 34 Fed. Rep. [2d] 791; *Charter Co.* v. *Bowring*, 281 U. S. 515; *The Casey*, 39 Fed. Rep. [2d] 136; *Moran* v. *Sturges*, 154 U. S. 256; *The City of Norwich*, 118 U. S. 468; *Panama R. R. Co.* v. *Vasquez*, 271 U. S. 557; *Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109; *St. Louis Railway* v. *Taylor*, 266 U. S. 209; *Vose* v. *Cockcroft*, 44 N. Y. 418; *The China*, 7 Wall. [U. S.] 53.)

*Homer L. Loomis* and *Philip A. Donahue* for respondents. The trial court, as a court of common law, was possessed of jurisdiction. The action is *in personam*, not

*in rem,* and is to enforce the personal liability of the defendant on its guaranty. (*Red Cross Line* v. *Atlantic Fruit Co.,* 233 N. Y. 373; 264 U. S. 109; *Steamboat Co.* v. *Chase,* 16 Wall. [U. S.] 522; *Nelson* v. *Belmont,* 21 N. Y. 36; *Sherwood* v. *Ruggles,* 2 Sandf. 55; *Waldron* v. *LeRoy,* 2 Caines, 263; *Fowler* v. *Rathbones,* 12 Wall. [U. S.] 102; *Hobson* v. *Lord,* 92 U. S. 397; *Broadnax* v. *Cheraw & Salisbury R. R. Co.,* 157 Penn. St. 140; *Jones* v. *Bridge,* 2 Sweeny, 431; *Columbian Ins. Co.* v. *Ashby,* 13 Pet. [U. S.] 331; *Barnard* v. *Adams,* 10 How. [U. S.] 270; *Marwick* v. *Rogers,* 163 Mass. 50; *Merithew* v. *Sampson,* 86 Mass. 192; *Backus* v. *Coyne,* 35 Mich. 5; *Cutler* v. *Rae,* 7 How. [U. S.] 729; *Knapp, Stout & Co.* v. *McCaffrey,* 177 U. S. 638; *Rounds* v. *Cloverport Foundry,* 237 U. S. 303; *Hudson* v. *New York & Albany Transportation Co.,* 180 Fed. Rep. 973.) The parties to the shipping venture, by agreement among themselves both at time of shipment and at time of redelivery of the cargo, provided for the adjustment of the general average in Italy pursuant to the laws there in force. The defendant recognized the plaintiffs in Genoa as the adjusters of the general average and co-operated with them in there adjusting the general average. (*Mavro* v. *Ocean Marine Ins. Co.,* L. R. 9 C. P. 595; L. R. 10 C. P. 414; *Nelson* v. *Belmont,* 21 N. Y. 36; *McAndrews* v. *Thatcher,* 3 Wall. [U. S.] 347; *Pacific Mail S. S. Co.* v. *New York, H. & R. Mining Co.,* 74 Fed. Rep. 564; *National Board of Marine Underwriters* v. *Melcher,* 45 Fed. Rep. 643; *Olivari* v. *Thames & Mersey Marine Ins. Co.,* 37 Fed. Rep. 894; *Simonds* v. *White,* 2 B. & C. 805; *Charter Co.* v. *Bowring,* 281 U. S. 515; *The Jason,* 225 U. S. 32; *Lewis* v. *Williams,* 1 Hall [N. Y.], 430; *Strong* v. *Firemen Ins. Co.,* 11 Johns. 323.) The general average adjustment was not open to attack except for fraud, corruption or other misconduct. (*Bedell* v. *Kennedy,* 109 N. Y. 153; *N. Y., L. & W. W. Co.* v. *Schneider,* 119 N. Y. 475; *Howard* v. *Sexton,* 4 N. Y. 157; *Davis* v. *Rochester Can Co.,* 124 Misc. Rep. 123; *Cobb* v.

*Dolphin Manufacturing Co.*, 108 N. Y. 463; *Welch* v. *Probst*, 151 App. Div. 147; *The John M. Chambers*, 24 Fed. Rep. 383; *Backus* v. *Coyne*, 35 Mich. 5; *Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109; *Lewis* v. *Williams*, 1 Hall [N. Y.], 430; *Dalglish* v. *Davidson*, 5 D. & R. 6; *Strong* v. *Firemen Ins. Co.*, 11 Johns. 323; *Loring* v. *Neptune Ins. Co.*, 20 Pick. [Mass.] 411; *Broadnax* v. *Cheraw & Salisbury R. R. Co.*, 157 Penn. St. 140; *Leggett & Co.* v. *500 Cases of Tomatoes*, 15 Fed. Rep. [2d] 270; *Johnson & Higgins* v. *Garrigues Co.*, 30 Fed. Rep. [2d] 251.) The general average agreement or bond was properly admitted in evidence. It was the only document conferring upon the plaintiffs their status as general average adjusters or trustees, which was put in issue by the defendant's answer, and it was the foundation of the adjustment and of the existence of which the guarantor must have known not only by reason of invariable practice but also because of its dealing with the average adjusters and trustees and securing their rights as fixed therein. (*Fidelity & Deposit Co.* v. *Queens County Trust Co.*, 226 N. Y. 225; *Williamson* v. *Brown*, 15 N. Y. 354; *First Nat. Bank* v. *National Broadway Bank*, 156 N. Y. 459.)

LEHMAN, J. The steamship *Caserta* stranded in the harbor of Palermo on February 28, 1920, in a sudden storm. The cargo was removed and placed upon lighters. The steamship's hull was damaged by the stranding. After the cargo was removed, the stranded steamship was pulled off by tugs and suffered further damages. The damages could not be repaired within a reasonable time so that the steamship might continue the voyage. The cargo was taken ashore and the shipowners forwarded most of the cargo to New York, the original place of destination, by another vessel of the same line. When the cargo arrived here, the shipowner refused delivery until the consignees had signed agreements for the adjustment of the general average contribution for which the goods might be liable, and had given guaranties to pay

such contribution. The defendant insurance company had insured two consignments of goods. To enable the consignees to obtain delivery of the goods, the defendant signed the following guaranty:

"NEW YORK, *Apr.* 1, 1920.

"Messrs. ENCIO REBORA & ELIA TARABOTTO,

"In consideration of the delivery from the S. S. 'Caserta' of all the goods insured by us, hereafter to be specified, without requirement of the deposit, we hereby guarantee the payment of all proper general average, salvage and/or special charges for which said goods are liable.

"BRITISH AND FOREIGN MARINE INS. CO.
   (LTD)                "W. A. W. BURNETT,
                          "*Sub-Underwriter.*"

The defendant had notice before it signed the guaranty that the rights of the consignees were governed by the provisions of the bill of lading. The bill of lading contains a provision that (Article 32) " in case of general average the adjustment shall be made at Genoa at the request of the Ship owning company in an amicable way, through two adjusters selected among the Expert Public Accountants registered at the Board of the Province of Genoa and appointed by specific authority given to the said Company from this moment." The " Ship owning company," pursuant to this power, appointed these plaintiffs as adjusters. The bill of lading further provides that all consignees agree to sign an agreement for general average contribution and give a deposit as guaranty for such contribution before delivery of the goods, and that the amount fixed as a guaranty for the average contribution shall not be subject to contestation. If the defendant knew that the shipowner had appointed these plaintiffs as adjusters, then by its letter it ratified the appointment, for its letter is addressed to the adjusters, and on its face the obligation assumed by the defendant

runs to the adjusters and not to the shipowners. After five years these plaintiffs, acting as adjusters, completed the statement of the general adjustment. In this action they have obtained judgment against the defendant for the general average charge, as shown by that statement, upon the goods which defendant had insured.

At the trial the plaintiffs urged that the statement of the general average prepared by the adjusters was a binding and conclusive adjudication of the charges for which the goods are liable, not subject to collateral attack by the defendant without proof of fraud, corruption or other misconduct. On the other hand, the defendant objected that the statement was not competent evidence and was without any probative force to establish the amount of defendant's liability. The trial judge held that the statement was admissible as *prima facie,* but not conclusive, evidence of the facts therein set forth, and submitted to the jury a number of questions as to its correctness.

The evidentiary competency and force of a statement of a general average adjustment in admiralty actions brought to charge the goods liable has been considered and discussed in *The Nesco* (47 Fed. Rep. [2d] 643). What was there said has little, if any application to the case before us. Here the defendant's obligation arises from its voluntary agreement, and the extent of the obligation is defined by the same instrument. Where a shipowner, acting for all interested parties, seeks to enforce against one party an obligation created by the rules of admiralty, there may be doubt as to the extent of the shipowner's power, acting through adjusters, to state or determine the conflicting interests and obligations. With such questions we are not concerned. Where a party expressly assumes a direct obligation to pay, or guarantees payment, to named adjusters of the amount chargeable against specified goods, the manner in which the amount chargeable is to be determined depends solely

upon the intention of the parties, as expressed in their agreements read in the light of surrounding circumstances.

The provisions of the bill of lading not only expressly provide, as we have shown, that the shipowner might appoint adjusters in case of general average, but require that before delivery of goods the consignees shall sign a guaranty in regard " to the contribution which they may be called upon to pay." The agreement exacted by the shipowner from the consignees as a condition of delivery of the goods provides that each consignee or party interested shall pay in proportion to his interest, " provided that such losses and expenses shall be stated and apportioned by Messrs. Ragionieri Emilio Rebora and Elia Taraboto, Average Adjusters in Genoa, in accordance with the rules provided in article 32 of the ' Caserta ' bill of lading  *  *  *.  We further agree to fully recognize and to satisfy without litigation the findings of such adjustment, not to oppose by any means the adjustment and settlement to be presented by the adjusters in fulfillment of the charge conferred upon them." Thus unmistakably the consignees expressed their intention that the amount of the contribution charged upon goods consigned to them should be determined finally and conclusively by these plaintiffs acting as adjusters. Otherwise after the delivery of the goods the consignees were under no further obligation to pay anything. Obviously, if the defendant's promise to " guarantee payment of proper charges " upon the goods insured is intended to cover this obligation to pay assumed by the consignees when the lien on the goods was released, the findings in the statement or report of the adjusters were not subject to attack.

The defendant does not contend otherwise; nor does it contend that it did not have notice that the consignees were under the bill of lading required to sign and did sign an " average agreement " before the shipowners' lien on the goods was released. It contends that it had no

notice that the average agreement signed by the consignees contained any provision that the charge against the goods would be measured in other manner than that provided by the admiralty law. A multitude of circumstances completely refute that contention. Implication that the average agreement which the shipowner might exact would contain clauses making findings of the adjusters incontestable may be found in the language of the bill of lading itself. Even if such implication were doubtful, the doubt would be removed by other circumstances. The defendant's promise is, as we have said, made not to the shipowner but to the persons constituted adjusters and trustees under the consignees' agreement. Perhaps that instrument made them the defendant's agents in stating the general average. Certainly when the defendant made a promise to these persons, even if it did not then know the terms of the consignees' agreement, it was bound to inquire as to the capacity of the persons to whom its promise was given, and had at least constructive notice that they were acting not merely as the appointed agents of the shipowner but with greater powers conferred by the other parties interested. Then, too, the defendant's promise is at least in form a guaranty, though perhaps in effect it may be a primary promise to pay. The defendant had previously insured the goods. For the loss caused to the insured by a general average charge it was liable to the insured. When thereafter it undertook to " guarantee payment " of that charge so that the lien on the goods might be released, the inference is clear that it intended that payment should be made in accordance with the consignees' obligation. Knowing that the consignees' obligation was defined by the consignees' agreement, it was bound by that definition. The ruling of the trial judge that the consignees' agreement was admissible in evidence was correct. When admitted, the findings in the statement of the adjusters, prepared pursuant to that agreement, were conclusive and preclude further litigation.

If we went back of those findings there might be questions of law deserving of serious consideration as to some of the items entering into them, even though the jury has resolved all questions of fact in favor of the plaintiffs. It is true that the court charged in effect that the statement was open to attack and that the plaintiff took no exception to the charge or to the refusal of the court to charge otherwise. Now we are told that the "plaintiff cannot sustain the verdict upon a ground taken from him by the trial judge. The ruling then made became the law of the case." (*Wangler* v. *Swift*, 90 N. Y. 38, 44, 45.) The rule of that case has no application here.

Here we are not asked to reverse a judgment for alleged error of law not raised by exception, nor to sustain a judgment upon a ground "taken from" the plaintiffs "by the trial judge," and which the defendant had no opportunity to controvert. We are asked to reverse for alleged errors of the trial court in submitting to the jury questions of fact which as a matter of law should have been determined in favor of the defendant if the statement of the adjusters was not conclusive. Every question of fact and of law had been exhaustively litigated before that ruling was made. We are not so hampered by ancient rules of procedure that we are compelled to reverse a judgment and grant a new trial upon which as a matter of law the plaintiff would be entitled to the same verdict merely because the trial judge permitted the jury to pass upon issues which in truth are not in the case. We are not called upon to determine whether as a matter of law the trial judge should have decided that the statement of the adjusters was, in whole or in part, erroneous on its face when, in truth, such errors, if they exist, would not have detracted from the force of the statement as a conclusive decision on all questions submitted to the adjuster.

The defendant further urges that under the authority

of the decision of the Supreme Court of the United States in *Langnes* v. *Green* (282 U. S. 531) a common-law court of this State was without jurisdiction of the subject-matter of this action. If we are correct in our interpretation of the defendant's agreement, that decision rendered after the judgment of the Appellate Division has no bearing upon such an action as this. The action here is brought upon an express agreement. The defendant's obligation is defined by the language of the instrument. The court was not called upon to enforce the maritime lien or even to determine its lien as a measure of the defendant's liability. The parties had agreed that the extent of the liability should be determined by the adjusters. The defendant cannot urge that under such a construction the courts of this State are without jurisdiction of the subject-matter.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.