SUSQUEHANNA SILK MILLS and Others, Appellants, *v.* EMILIO REBORA and Another, as Trustees, and Others, Respondents.

First Department, April 21, 1933.

*James W. Ryan* of counsel [*Bigham, Englar, Jones & Houston,* attorneys], for the appellants.

*Homer L. Loomis* of counsel [*Loomis, Williams & Donahue,* attorneys], for the respondents.

MERRELL, J. The present action is brought by a number of insurance companies who joined as nominal parties plaintiff their respective assureds. Plaintiffs, in the complaint, attempt to set forth facts which plaintiffs claim entitled them to equitable relief and for a judicial accounting by defendants of their acts as general average adjusters under an agreement entered into between the appellants' assureds as consignees of certain merchandise delivered to them by the defendant Navigazione Generale Italiana. The defendants in this action are Emilio Rebora and Elio Tarabotto, as general average adjusters for Navigazione Generale Italiana, and as trustees. Navigazione Generale Italiana is also made a party defendant, as is Italia-America Shipping Corporation and Angelo Ruspini, the manager of the latter corporation, as the American

agents of Navigazione Generale Italiana and Homer L. Loomis, and Homer L. Loomis, Reginald B. Williams and Philip A. Donahue, doing business under the firm name and style of Loomis, Williams & Donahue. The latter individuals are made parties defendants as the legal representatives of said general average adjusters and of said shipping corporations in this country. The defendants moved to dismiss the complaint under rule 106 of the Rules of Civil Practice for want of jurisdiction and failure to allege facts sufficient to constitute a cause of action appearing on the face of the complaint. This motion was granted at Special Term, and it is from the order entered on said motion that the present appeal is taken.

The complaint in this action brought by the insurance companies impleaded with their respective assureds discloses that the assureds have no interest in the subject-matter of the action, but that the action is prosecuted by the insurance companies. The said insurance companies were and are unsuccessful parties defendant or the confederates of unsuccessful parties defendant in a long series of litigations at law in the New York State courts and in the Federal courts growing out of actions brought by the defendants herein as general average adjusters for the collection of general average due from said plaintiffs pursuant to a general average agreement entered into between the assureds and the Italian steamship company growing out of the wreck of the steamship *Caserta*, owned by said company, which sailed from Genoa, Italy, for New York in February, 1920, laden with a large quantity of valuable merchandise consigned to various American consignees. One of these actions, which recently passed through this court, was brought by the defendants Rebora and Tarabotto, as general average adjusters and trustees for Navigazione Generale Italiana against British & Foreign Marine Insurance Company, Ltd. In that action the defendant was represented by the same attorneys who now are appearing for the plaintiffs, appellants. The action was to recover the amount determined by said adjusters to be payable upon two shipments of merchandise consigned to Vve. Guerin & Fils, of New York, and B. Altman & Co., of New York, and for which the defendant insurance company in that action had guaranteed payment of general average pursuant to said general average agreement entered into by the various consignees of merchandise shipped on said steamship *Caserta*. At the trial of that action the jury returned a verdict in favor of plaintiffs and against defendant upon which judgment was entered in plaintiffs' favor and against defendant for $51,463.25. Upon appeal to this court the judgment rendered at Trial Term was unanimously affirmed (*Rebora* v. *British & Foreign Marine Ins. Co., Ltd.*, 232 App. Div. 730). Application was then made to this court

by the defendant in that action for leave to appeal to the Court of Appeals, and said application was denied. Thereupon the defendant applied for and received permission from the Court of Appeals to appeal to that court from the unanimous affirmance by this court of the judgment rendered as the result of the trial at Trial Term. The Court of Appeals, however, unanimously affirmed this court, Judge LEHMAN writing for the Court of Appeals (258 N. Y. 379). Thereupon the defendants moved in Court of Appeals for a reargument of said appeal, and said motion was denied. (259 N. Y. 507.) On the day following the entry of the order of the Court of Appeals denying said motion for reargument the present action was brought by the various insurance companies impleaded with their assureds for equitable relief.

The order appealed from was right and should be affirmed upon several grounds:

*First.* This court is bound by its decision on a former appeal herein (*Susquehanna Silk Mills* v. *Rebora,* 236 App. Div. 651) where the sufficiency of the plaintiffs' complaint was directly involved, and upon which appeal this court held that the complaint did not state facts sufficient to constitute a cause of action for equitable relief. Not only was the sufficiency of the plaintiffs' complaint directly involved upon the prior appeal, but the determination of the appeal required this court to pass upon the sufficiency of the allegations of the complaint. Therefore, the question presented upon the present appeal is *res adjudicata,* so far as this court is concerned.

*Second.* Plaintiffs do not come into a court of equity with clean hands. Their previous conduct has been so inequitable as to deny them the right to ask the intervention of a court of equity. This court may take judicial notice of facts disclosed in this and prior suits involving the same subject-matter.

*Third.* The allegations of the complaint fail to show any grounds for requiring an accounting by the defendants.

*Fourth.* Plaintiffs' action is premature, and in no event can the plaintiffs require an accounting by the general average adjusters appointed by all of the assureds and upon whose findings the assureds agreed to abide.

*Fifth.* No demand for an accounting was made prior to the commencement of the present action.

*Finally.* An accounting at the present time is quite impracticable.

An intelligent appreciation of the questions presented by this appeal requires a somewhat extended narrative of the circumstances resulting in the appointment of the defendants as general average adjusters, the duties cast upon them, and their performance thereof.

The steamship *Caserta*, flying the Italian flag and bound from Genoa to New York by way of Naples and Palermo, loaded with a cargo of freight and carrying passengers, when leaving the harbor of Palermo stranded in said harbor during a hurricane and remained upon the rocks a period of eleven days. During this period a large amount was expended by the shipowner in attempting to float the steamship from the rocks and in the interests of the common safety of both the steamship and its cargo. This expenditure for the common good was largely the expense of tugs and lighters used in an effort of salvaging the steamship and its cargo. Forty per cent of the cargo was either thrown overboard or damaged to such an extent that it was not practicable to reship the same to the destination to which it was intended, and the same was either lost or sold and disposed of at a low price. An attempt was made, after the vessel was free from the shoals, to repair the same with a view of continuing its voyage to New York. However, injuries to the vessel were of a nature that it was impossible to continue its voyage, and it went into drydock for repairs, where it remained substantially a year before the damage was fully mended. Among the consignees of cargo were Vve. Guerin & Fils, of New York, to whom was consigned fifty bales of silk, and B. Altman & Co., New York, to whom was consigned six cases of marble dust. When it became apparent that the *Caserta* could not continue its voyage from Palermo, the merchandise in question was transferred to another ship belonging to the same owner as the stranded steamship, known as *Duca d'Aosta*, and thereon was carried to the port of New York. After making the efforts to release the *Caserta* and her cargo from their position of peril and the voluntary incurring of heavy expense and serious sacrifice, both of the ship and the cargo, the owner of the vessel applied to the Civil Court of Palermo for the appointment of a receiver to take charge of the cargo, and said receiver determined what part of the cargo should be forwarded, and what part should be sold or otherwise disposed of. Before delivering the salved cargo either at Palermo or New York the owner of the vessel as the bailee of the cargo, in furtherance of the strict obligation imposed upon it by law to assert a lien on the same in behalf of all interests, both cargo and hull, which had been sacrificed for the common good, called upon the owners of the salved cargo to join with it in the appointment of general average adjusters, as trustees, to adjust the general average payable from the various interests suffering from the disaster, and also to provide cash deposits or, in lieu thereof, a satisfactory guaranty that such amounts thereafter found to be due by such adjusters as general average, salvage or special damages would be promptly paid. The two New York consignees of the

silk and marble dust, as well as all the other consignees of goods on the vessel, entered into an agreement with the vessel owner and all other consignees on the arrival of the *Duca d'Aosta* at the port of New York and entered into an average agreement which provided for the appointment of the two defendants herein as average adjusters and as trustees for all parties concerned for the purpose of adjusting the general average payable as between the various interests and to state the amounts respectively due from one to the other. The average agreement entered into between the shipowner and the various interested parties recited the wreck of the *Caserta* in the harbor of Palermo, and the loss and expense incurred constituting general average apportionable on the vessel, her earnings as freight and her cargo, and other losses and expenses incurred, and provided that the owners, shippers or consignees of said vessel, her earnings as freight or her cargo, bound themselves severally, but not jointly, one to the other, and covenanted and agreed to and with the defendants herein, as trustees for all concerned, " that all losses and expenses aforesaid, which shall be made to appear to be due from us or our principals, or from any firm of which we are or have been copartners either as owners, shippers or consignees, shall be paid by us respectively, according to the part or share in the said vessel, her earnings as freight or her cargo, which shall belong to us or shall belong to or be consigned to any persons for whom we are agents or attorneys, or with whom we are or have been partners or in which we are or have been in any manner concerned, provided that such losses and expenses shall be stated and apportioned by Messrs. Ragionieri Emilio Rebora and Elio Tarabotto, Average Adjusters in Genoa, in accordance with the rules provided in article 32 of the *Caserta* bill of lading." The agreement further provided: " We hereby do further recognize and accept the Surveyors that will be chosen and appointed by the aforesaid Average Adjusters and exempt the same from any legal formality in making their adjustment, including the filing with the Italian Court and the ratification by the latter of said adjustment. This agreement may be executed in several parts of like tenor and date, the whole of which are to constitute but one agreement, with the same effect as if each of said parts were severally signed by us.

" We further agree to fully recognize and to satisfy without litigation the findings of such adjustment, not to oppose by any means the adjustment and settlement to be presented by the adjusters in fulfillment of the charge conferred upon them."

Article 32 of the *Caserta* bills of lading provided, among other things, as follows: " Art. 32. In case of general average, the adjustment shall be made at Genoa at the request of the Ship-owning

Company, in an amicable way through two adjusters selected among the Expert Public Accountants registered at the Board of the Province of Genoa and appointed by the Ship-owning Co. by specific authority given to the said Company from this moment by the Shipper for himself and third parties interested with him herein, the shipper and the consignee waiving all objections in this respect."

Article 34 of the same bills of lading provided as follows: " Art. 34. For any matter not regulated or contemplated by the present contract or transportation, the dispositions of the Italian code of commerce shall rule."

Upon the arrival of the goods in New York and for the purpose of releasing the same to the consignees, the consignees applied to insurance companies for a guaranty of payment of the proper general average, salvage and special charges for which the goods consigned were liable. Thereupon, in accordance with the usual practice of cargo insurers to furnish either cash deposits or written guaranties, the various insurance companies insuring the various consignees executed agreements guaranteeing the payment by the consignees of all proper general average, salvage or other charges for which the goods received by the consignees, respectively, were liable. When the merchandise arrived at the port of New York upon the steamship *Duca d'Aosta*, the owner of said vessel exacted the execution of a general average agreement by the consignees. This was done and the two defendants, Rebora and Tarabotto, were selected from certified public accountants at Genoa in accordance with the provisions of the Italian law. These adjusters proceeded with the adjustment of the general average and the preparation of a statement and award setting forth their conclusions, findings and the results. The work of these general average adjusters was long and laborious and was not completed until March 16, 1925, when their report was published. This adjustment necessitated the examination of each piece of property involved in the general average for the purpose of valuation and appraisal of damage and the valuation of the same in its salved condition and the determination of the loss suffered, if the articles were damaged, and the separation and classification of each article; the determination as to whether the injuries suffered were accidental or voluntary, and if voluntary, whether for the good of all or specially for the advantage of each. There was also involved every item of expenses or disbursements incurred in connection with the disaster, and the balancing or adjustment of the various items determined, valued and classified, to the end that each interest might be charged or credited with a proportionate part of the general average, salvage or special charges. A copy of the report of the general average adjusters was presented upon the hearing of an

earlier appeal to this court covering 371 closely typewritten pages, and we may now take judicial notice thereof as a part of the record of this court. The general average statement or award stated the general average for the various items of merchandise in Italian lire and as to the various amounts the consignees were called upon to pay.

The duties of the general average adjusters in this case were three-fold. They were, first, called upon, under the agreement entered into by all of the parties, to make an adjustment of the general average. They were, next, called upon to collect from the various parties the amount due from each; and, finally, they were required to make distribution of the amount collected among those entitled thereto, according to their respective interests. The first branch of the duties of the general average adjusters was completed and their report published, as above stated, on March 16, 1925. It next became the duty of the general average adjusters, acting for the various assureds, to collect the amounts due under the policies of insurance given by the various insurance companies guaranteeing the performance by the assureds of the general average agreement. The efforts of the general average adjusters in this respect were at once met by determined opposition on the part of the plaintiffs herein. Every obstacle possible was thrown in the way of a performance by the general average adjusters of their duty to collect the amount due from the various parties. For five years the efforts of the adjusters were met by determined opposition by these plaintiffs, and it was only after the Court of Appeals had finally decided, in the action brought by the general average adjusters against the British & Foreign Marine Insurance Company, Ltd., one of the plaintiffs herein, that the adjusters were entitled to recover of the insurance company the amount due from its assured, and when every avenue to further obstruction was closed to these plaintiffs, that they saw fit to come into a court of equity and seek an accounting by the adjusters under the general average agreement which they had so long and so persistently flouted. The defendant in the action brought by the general average adjusters refused to pay the amount fixed by the general average adjusters, and thereupon as trustees the defendants in the present action brought suit to recover of the defendant insurance company the amount thus adjusted as against the two consignees, Vve. Guerin & Fils and B. Altman & Co., which it had insured. Various issues were litigated on the former action, and many questions of law and fact were presented at the trial, all of which were resolved in favor of the plaintiffs in that action and against the insurance company. Similar actions were brought against consignees and said insurance com-

panies, and litigations were had between the general average adjusters and the plaintiffs herein in courts of this State and of the United States for the collection of general average. In all of said litigations the present defendants were the successful parties plaintiff. Judgments were obtained in said actions aggregating about $100,000. All actions so brought by the general average adjusters were defeated by the insurance companies represented by the same counsel who are representing the appellants on the present appeal. Prior to the commencement of this action, judgments had already been obtained against British & Foreign Marine Insurance Company, Ltd., Switzerland General Insurance Company, Washington Marine Insurance Company of New York, since succeeded by United States Merchants and Shippers Insurance Company, and The Insurance Company of North America. These judgments thus obtained are as follows: That already adverted to against British & Foreign Marine Insurance Company, Ltd., $51,463.25; judgment has already been obtained after a trial at Trial Term in *Navigazione Generale Italiana* v. *Switzerland General Insurance Company* for $4,521.16; also by the same party plaintiff as the owner of the ship against Washington Marine Insurance Company of New York for $12,671.80; also in an action brought by the same plaintiff against Insurance Company of North America, tried in United States District Court for the Southern District of New York and resulting in a judgment in favor of plaintiff for $17,905.56. There were also actions brought and judgments recovered against Union Insurance Society of Canton, Ltd., and against Hudson Insurance Company and Norwegian Atlas Insurance Company, Ltd., for the respective amounts of $10,136.77, $1,397.81 and $1,397.81, together with costs against the two last-mentioned insurance companies in the sum of $227.75. As before stated, the judgment obtained by the defendants herein against British & Foreign Marine Insurance Company, Ltd., has been upheld by all the courts, including the Court of Appeals. After plaintiffs herein had been repeatedly defeated in their efforts to obstruct the collection of the general average pursuant to said general average agreement, *on the day following the refusal of the Court of Appeals to grant a reargument of the appeal* taken by the British & Foreign Marine Insurance Company, Ltd., the defeated judgment debtor in said action, with its confederates, brought the present action in equity. The pretense for the bringing of such action was that, inasmuch as they were creditors in general average as well as debtors, they were entitled to the intervention of a court of equity and to a judicial accounting of all that the successful parties defendant had done to date in the way of collecting, adjusting and settling the general average.

Unquestionably, when the cargo of salved merchandise reached the port of New York, the shipowner had a lien on the cargo for general average contribution due from the consignees of the merchandise, and it was necessary to preserve the same for the protection of all persons who might finally be determined to be creditors in the general average to be adjusted, and if security was not obtained, the vessel owner itself would be liable to all such creditor interests for the general average which might finally be found to be due from the debtor interests to the creditor interests. The owner of the vessel agreed to accept, in consideration of the surrender of such lien and in lieu of cash deposits, the written guaranties of the insurance companies that the consignees would pay upon the finding of the general average adjusters. Pursuant to the general average adjustment agreement, the adjustment of general average was made up at Genoa by the two general average adjusters mentioned who are defendants in the present action. Their report showed various amounts due as general average from the various owners of the cargo, and also various amounts due to the different owners of the cargo. The debtor interests and their respective underwriters were then called upon to pay under the said general average guaranties the amounts shown to be due from them. At this point the insurance companies, apparently acting in concert under an organization known as the board of underwriters of New York, for the first time refused to recognize the general average agreement entered into by the consignees as aforesaid, and refused to recognize the general average adjustment or award made by Rebora and Tarabotto. Through the control of these insurance companies the consignees of the cargo were prevented from abiding by and acquiescing in the results obtained by the general average adjusters. It, therefore, became necessary for said adjusters to bring the large number of actions against said insurance companies on the said general average agreement and their written guaranties of performance thereof by the consignees. Not only did the plaintiffs require the general average adjusters to bring separate actions, but attempted to interpose every obstacle possible to the prompt, speedy and inexpensive trial of the issues in said actions. They alleged in the actions various defenses, among them that the general average agreement had been forced from the consignees by duress and against their will. There was nothing to such claim and no proof was offered in support thereof upon either of the trials in the said actions brought by the general average adjusters. It was also claimed by the insurance companies that no recovery should be had, because the vessel had been valued by the adjusters at too low a figure and the cargo had been valued at too high a figure; that too much had been allowed as

general average loss and expense for the vessel and too little allowed for general average loss or expense for the cargo, and that the law applicable thereto was the custom governing at the port of New York instead of the Italian law and instead of the York-Antwerp rule, which they had previously urged in their amended answers, but had abandoned at the trial. It was also claimed on one of the trials that the adjusters had no right to sue as trustees, since in the final balance of the general average adjustment the vessel owner was a debtor and not a creditor. In all of the actions they claimed that, irrespective of the question whether or not they had disputed any one or more of the thousands of items entering into the general average adjustment, the plaintiffs were under the necessity to prove in the minutest detail each and every item, and failing in that, the general average action should be defeated. They attempted to avoid payment under the general average guaranty by them, no matter how they might succeed in accomplishing that end. In each of the actions the insurance companies repudiated the general average agreement and the general average adjustment, and the force and effect of the written guaranties which they had given. Among other tactics to which plaintiffs resorted after the trial of the action against the British & Foreign Marine Insurance Company, Ltd., plaintiff sought to prevent any further jury trials of said actions by applying for the appointment of a referee to take detail proofs respecting each of the thousands of items involved in the adjustment. The effect of this application would be to readjust the general average which had been committed to the defendants herein. Being denied such relief, appeals were taken by the insurance companies in all the cases, the insurance companies refusing to consent, for the purpose of avoiding expense, time and trouble of separate appeals, that said appeals should await the outcome of the one case on appeal to the Court of Appeals. The Court of Appeals, which granted leave to the defendant insurance company to appeal to that court from the unanimous affirmance by this court, upheld the binding force and effect of the general average agreement as a submission to arbitration and to the general average adjustment and statement thereof as an award of arbitrators, as well as the binding force and effect of the written guaranties of the insurance companies given as aforesaid. Judge LEHMAN, in writing for the Court of Appeals in *Rebora* v. *British & Foreign Marine Ins. Co., Ltd.* (258 N. Y. 379), in upholding the general average agreement executed by the various consignees, stated (at p. 386): " The agreement exacted by the shipowner from the consignees as a condition of delivery of the goods provides that each consignee or party interested shall pay in proportion to his interest,

' provided that such losses and expenses shall be stated and apportioned by Messrs. Ragionieri Emilio Rebora and Elia Tarabotto, Average Adjusters in Genoa, in accordance with the rules provided in article 32 of the *Caserta* bill of lading * * *. We further agree to fully recognize and to satisfy without litigation the findings of such adjustment, not to oppose by any means the adjustment and settlement to be presented by the adjusters in fulfillment of the charge conferred upon them.' *Thus unmistakably the consignees expressed their intention that the amount of the contribution charged upon goods consigned to them should be determined finally and conclusively by these plaintiffs acting as adjusters.*" (Italics are the writer's.)

At the bottom of page 386 Judge LEHMAN continues: "It [the defendant] contends that it had no notice that the average agreement signed by the consignees contained any provision that the charge against the goods would be measured in other manner than that provided by the admiralty law. A multitude of circumstances completely refute that contention. Implication that the average agreement which the shipowner might exact would contain clauses making findings of the adjusters incontestable may be found in the language of the bill of lading itself. Even if such implication were doubtful, the doubt would be removed by other circumstances. The defendant's promise is, as we have said, made not to the shipowner but to the persons constituted adjusters and trustees under the consignees' agreement."

At the bottom of page 387 Judge LEHMAN, referring to the general average agreement, has this to say: "The ruling of the trial judge that the consignees' agreement was admissible in evidence was correct. When admitted, the findings in the statement of the adjusters, prepared pursuant to that agreement, were conclusive and preclude further litigation."

Throughout the trial of the action brought by these defendants against British & Foreign Marine Insurance Company, Ltd., the defendant in that action, who is one of the plaintiffs here, assailed the general average agreement and its effect on the manner in which the general average adjusters had performed their duties. In that case the defendant disclaimed any liability under the said general average agreement and refused to be bound thereby, and upon the appeal to this court the same position was maintained. When the Court of Appeals held that the position taken by the defendant in that case was untenable and that the action of the general average adjusters under the agreement was unassailable and that their findings, prepared pursuant to that agreement, were conclusive and precluded further litigation, the opposition of these plaintiffs came to an end.

The foregoing facts clearly show how unreasonable and bitter have been the persistent efforts on the part of the insurance companies to defeat the just and reasonable demands of the Navigazione Generale Italiana and of the general average adjusters and trustees and the inequitable conduct of said insurance companies in doing everything within their power to obstruct, hinder and delay the vessel owner and the average adjusters and trustees in collecting the general average adjustments and in finally settling and distributing to the various creditor interests the amounts properly found their due in general average. The present action is but one more step in the persistent efforts on the part of the plaintiffs herein to thwart the agreement entered into by the consignees of the goods in question.

The conduct of the plaintiffs has been so inequitable and unjust as to deny them any equitable rights whatever in the premises. It is the settled doctrine that one seeking equity must come into a court of equity with clean hands. Certainly the tactics heretofore adopted by the plaintiffs do not entitle them to the consideration of a court of equity. Mr. Justice GRAY in *Karrick* v. *Hannaman* (168 U. S. 328, 335) correctly stated the rule as follows: "A court of equity, doubtless, will not assist the partner breaking his contract to procure a dissolution of the partnership, because, upon familiar principles, a partner who has not fully and fairly performed the partnership agreement on his part has no standing in a court of equity to enforce any rights under the agreement. *Marble Co.* v. *Ripley*, 10 Wall. 339, 358." The rule is thus aptly stated in 14 Abbott's New York Digest, 588: " Equity will not assist those who by indirection violate their agreements, or by such means attempt to secure that to which under ordinary circumstances they would not be entitled, any more than it would aid them in such an attempt, if made by direct action." The plaintiff insurance companies having brazenly violated the general average agreement entered into by the consignees, of whom they were guarantors, and having repudiated all the various obligations to which the assured had entered, now seek, through a court of equity, to evade the plain and binding agreement into which their principals had entered.

The facts do not show plaintiffs entitled to any accounting. According to the allegations of the complaint, the amounts to which they claim to be entitled are ascertained and are definite and certain. While, in their prayer for relief, it appears that the alleged purpose of the action is for an accounting, along with other incidental and provisional relief, it is apparently the attempt of plaintiffs to have a court of equity determine through a judicial accounting the proposed sums due plaintiffs, and, therefore, to

enforce by judicial process the payment of any balances found to be due plaintiffs. However, in paragraph sixth of the complaint it is stated: " Under the provisions of the said trust indenture, the defendants Emilio Rebora and Elio Tarabotto obligated themselves to collect and hold the said trust property for the sole use and benefit of said persons concerned, including the plaintiffs; *and to pay over to the plaintiffs, respectively, in the City of New York, the parts, shares or sums of money totaling 1,628,518.09 Italian lira, determined and set forth in said settlement marked Exhibit ' C ' annexed hereto, as due and payable to plaintiffs.* The plaintiffs' interest totaling 1,628,518.09 Italian lira in the cargo on the *Caserta* and in said trust indenture and said trust estate constitutes more than fifty-three per cent (53%) of the total interest of 2,990,833.51 Italian lira of all persons therein." (Italics are the writer's.) And in paragraph eighteenth of the complaint we find the following: " The defendants Emilio Rebora and Elio Tarabotto, as trustees, have made no accounting whatever to the plaintiffs since the settlement was prepared and presented on March 16, 1925, Exhibit ' C ' annexed hereto, *determining the sums to be collected as constituting said estate and determining the shares thereof to be paid over and distributed to the plaintiffs.*" (Italics are the writer's.)

These allegations destroy any right of plaintiffs to an accounting. There is no doubt that where a demand exists and where the amount thereof is known, there is no right to an accounting in equity, and that the rights of the party demanding the accounting are purely at law, and courts of law have ample jurisdiction to render judgment for the amounts claimed to be due. All that the plaintiffs are seeking to do in this action is to substitute a court of equity in place of the adjusters and arbitrators who alone were vested with the power of adjusting and settling the accounts. The decision of the Court of Appeals has been that the adjusters at Genoa are the proper persons *and the only proper persons* to carry on the work of including or excluding any additional sums which may be found to form interest, expenses and losses. It is absurd to say that the court of equity shall be substituted in place of adjusters and arbitrators named pursuant to the maritime law and who were accepted and agreed to without a single dissent by the plaintiffs and those whom they represent. The question presented in this regard was passed upon in the English case of *Scott* v. *Corporation of Liverpool* (5 Jur. [N. S.] 105, 107). The facts in that case were very similar to those presented upon this appeal. In that case an adjuster or arbitrator had been selected by the parties to pass upon involved accounts. The rights of the parties were dependent wholly upon whatever findings the adjuster or arbitrator should make. Before

the work of the adjuster had been finally completed one of the parties concluded to apply to a court of equity and procure a judicial accounting of the very matters submitted to the adjuster. Accordingly he brought his action for an accounting in equity joining as defendants the other party to the arbitration agreement and the adjuster or arbitrator. The action was dismissed and the decree of dismissal affirmed by the appellate court. On the appeal the lord chancellor said (at p. 110): " But where the contract provides for the determination of the claims and liabilities of the contractors by the judgment of some particular person * * * until he has spoken, no right can arise which can be enforced either at law or in equity. I think that the defendant Hawksley stands in this relation to the plaintiffs in this case. They have agreed to submit themselves entirely to his judgment, but now decline his authority. If the Court were to assume the jurisdiction which is prayed, it would not be enforcing the contract of the parties, but acting in direct opposition to it. I think, therefore, that the decree of the Vice chancellor must be affirmed, and the appeal be dismissed with costs." The main reason why the accounting in equity should not be had is that Rebora and Tarabotto, as general average adjusters and trustees, are given power without let or hindrance for the recasting of the general average credits shown in their adjustment of March 16, 1925. We think such right is fully upheld by the decision of the Court of Appeals (258 N. Y. 379). In his opinion in that case Judge Lehman recognized the right and duty of the average adjusters and trustees to sue the debtors in general average. Those debtors are the plaintiffs in the present action and their confederates. It was the duty of the general average adjusters to expend money in that behalf and to apportion whatever expense they incurred among the various creditor interests in general average. General average adjusters are clothed with the right and it is their duty to pursue recalcitrant general average debtors and to apportion the expense incurred in such proceedings over the interests of the general average creditors, remitting to them any net balances remaining. There is no reason why the general average adjusters and trustees should be charged with such expense. The position of the plaintiffs at the present time is that of reliance upon the general average agreement which they opposed so persistently until after the final decision of the Court of Appeals aforesaid, holding that said average adjusters and trustees, and they alone, were intrusted with the adjusting and settling finally of the entire matter of general average. The work of collecting the general average due from the various debtor interests and of apportioning and prorating the expense incurred among the various creditor

interests, and in disbursing, distributing and remitting to the various creditor interests the net balances their due is fully as important as the work of adjustment first undertaken by the general average adjusters. This work under the agreement was to be performed exclusively by the defendants in this action as general average adjusters and trustees. Therefore, a court of equity has nothing whatever to do with that which the plaintiffs seek. The plaintiffs are not entitled to come into a court of equity and to cut short the work of the adjusters which is only partly performed. That there has been delay in the performance of their work and, particularly, in the collection of the amounts due from the various consignees has been due almost entirely to the persistent and do ged efforts on the part of the plaintiffs to prevent and bedevil the work of the general average adjusters. There can, of course, be no accounting or distribution until the work of the general average adjusters in collecting the amounts due is completed.

Finally, this court held that the court at Special Term on the former appeal, in its discretion, very properly refused to hamstring the general average adjusters by granting either a temporary injunction or requiring them to furnish a bond of $100,000 to protect the plaintiffs. There is not the slightest evidence but that the adjusters are acting in good faith and the circumstances show that they have acted with reasonable dispatch, and the only delay that has resulted has come from the obstacles thrown in the way of the adjusters by the plaintiffs themselves. Most, if not all, of the consignees are entitled to substantial sums upon the final adjustment, and it is only by reason of the dilatory tactics adopted by the insurance companies that a speedy adjustment has been prevented.

The basic facts upon the present appeal are the same as those on the former appeal. The last appeal in the present action was from an order granted at Special Term denying a motion made by plaintiffs for a temporary injunction restraining the defendants, until they should file a bond or a retrial be held, from transmitting the trust property from New York to alien, non-resident trustees. The Special Term refused the plaintiffs injunctive relief and refused their application to compel the defendants to furnish a bond before removing the moneys collected from this country. This court affirmed the order of the Special Term (*Susquehanna Silk Mills* v. *Rebora*, 236 App. Div. 651). The sufficiency of the plaintiffs' complaint was directly involved on the former appeal, and had the complaint stated facts sufficient to constitute an equitable action for an accounting, the plaintiffs clearly would have been entitled to the injunction prayed for. In affirming that order this court there held that the complaint herein did not show any

facts entitling plaintiffs to an accounting. The holding of this court on the former appeal became the law of this case. This court, in passing upon the questions here involved, may take judicial notice of the records before the court and the court's decision upon the last appeal. Likewise, it is justified in taking judicial notice of its records upon the appeal taken by the plaintiffs herein in the action brought against the British & Foreign Marine Insurance Company, Ltd., and decided adversely to the contention of these plaintiffs. In that action the parties were the same as those in the present action, and were represented by the same counsel. It, therefore, seems beyond question that this court is bound by its decision on the last appeal, wherein it passed upon the sufficiency of the plaintiffs' complaint, and held that the same did not state facts sufficient to constitute an action for an equitable accounting.

An accounting by the defendants at this time is impracticable. The plaintiffs brought this action on the very next day after the Court of Appeals had denied their application for a reargument in the action brought by the general average adjusters against the British & Foreign Marine Insurance Company, Ltd., and the present long complaint was then served upon the defendants. No demand had ever been made of the defendants up to the time of the bringing of the present action for any accounting. Without any previous demand, the present action was launched by the plaintiffs, after they had been unsuccessful in their efforts to destroy the general average agreement. In no event can the defendants ever be called to account until the performance of their duties under the general average agreement has been completed, and then only by reason of fraud or some other wrongful act on the part of the adjusters.

For the reasons stated, the order appealed from should, therefore, be affirmed, with twenty dollars costs and disbursements to defendants, respondents, against plaintiffs, appellants.

FINCH, P. J., SHERMAN and TOWNLEY, JJ., concur; MARTIN, J., dissents and votes to reverse and deny the motion.

MARTIN, J. (dissenting). The main question before the court is whether the complaint herein states a good cause of action. In my opinion the complaint adequately sets forth a very meritorious cause of action in equity. It is also contended that the action is premature.

The complaint alleges a breach of the trust agreement by defendants; that they have favored certain creditors and have paid them in full, although there was apparently no reason for making such payments; that there are not sufficient funds to warrant payment

in full; that they have permitted a favored creditor to collect and retain sufficient funds to pay in full the amount claimed to be due, although an accounting will show that no such payment should have been made. It is also alleged that other creditors have not received any payments on account or otherwise.

The complaint also alleges that the trustees have collected certain moneys, at least a part of which are now due and owing to the plaintiffs and should be paid; that the trustees have refused to collect from debtors who have been favored by the trustees because of the fact that they are interested financially; that several years have passed without any attempt to make such collections, and there is no likelihood of said debtors being compelled to pay in the near future, or the amount due collected; that there are debtors who have neither paid nor been sued for the money they owe. It is also set forth that the trustees have neglected and continue to neglect their duties and have failed and refused to carry out the terms of the trust agreement and to pay the plaintiffs money which has concededly been due for some time past. The plaintiffs have, therefore, been compelled to resort to the only remedy available, a suit in equity for an accounting.

The only charge against the plaintiffs is that they contested their liability. They had a right to do so. That liability has been settled. It is far fetched to now say they may never sue to recover money concededly due them and that the trustees may refuse to collect and account for a large sum now due from a debtor in whom the trustees are interested and from whom it is alleged they have not attempted to collect a debt concededly due.

If the prevailing opinion be correct, the plaintiffs have no means of obtaining the proportionate share of the money now due them and already in part collected by the trustees, and in their possession. They are also left without means to make the trustees collect or to attempt to collect the amount due from their principals. That is the whole story in a few words. The defendants having failed to carry out the agreement in several particulars the plaintiffs must have a remedy.

The order dismissing the complaint should be reversed, with twenty dollars costs and disbursements, and the motion denied.

Order affirmed, with twenty dollars costs and disbursements.